## IN THE MATTER OF MORDECAI SARBONE, AN ATTORNEY AT LAW.

Argued March 20, 1973—Decided May 21, 1973.

*Mr. Frederick C. Vonhof* argued the cause for Essex County Ethics Committee.

*Mr. Robert L. Podvey* argued the cause for respondent.

PER CURIAM. The Essex County Ethics Committee filed its presentment charging respondent, Mordecai Sarbone, with misconduct as an attorney in three separate matters. The proceedings before the Committee were initiated by a written complaint filed by David A. Berney, a former client of respondent's. We consider the matters separately.

### The 1962 mortgage transaction.

In early 1960 respondent and others organized a mortgage company and obtained Federal Housing Administration certification as an approved lending institution. The company operated as a mortgage banker originating loans, closing loans, selling loan packages to permanent lenders and servicing mortgages. Respondent, who became president of and counsel to the company, had invested substantial funds of his own in the venture. Berney, who was then a client and personal friend of respondent's, became a stockholder in the company by purchasing 20 shares of 15% cumulative preferred stock at a cost of $10,000.

In 1962 the company found itself in need of improving its asset picture in order to maintain certification with F. H. A. To that end respondent persuaded Berney and his wife to execute a second mortgage on an apartment building owned by them which was to be used as an ostensible company asset. The mortgage, dated March 27, 1962, was in the amount of $68,000 and named respondent as the mortgagee.* The mortgage was assigned to the com-

---

*The Berneys dispute respondent's version as to when and where the mortgage was executed, the agreed amount thereof, whether it was to be recorded and whether respondent immediately gave his personal note in consideration. These factual disputes are not material to our consideration.

pany by respondent and appeared as an asset on its books. Some twenty-one months later the mortgage, which had been recorded, was returned to the Berney's and cancelled of record. Admittedly they suffered no financial loss in the transaction.

The Ethics Committee found that respondent had procured the execution of a false instrument calculated to deceive, and had exposed his clients (the Berneys) to a substantial risk and potential liability.

It is difficult to reconstruct the full picture of the transaction after the lapse of so many years. Company records are not available (the company failed and is now defunct) and pertinent documents cannot now be located. The inherent frailty of memory of events of ten years ago is also a factor, particularly where credibility is involved. We are not so much concerned with the exposure of the Berneys to possible liability. They seem to have been fully aware of what they were doing in protecting their original investment by bolstering the company's financial picture.

The real problem is whether or not it was an attempted fraud on F. H. A. However, the record does not indicate whether the mortgage was represented as accomodation security and whether respondent, had he been called upon, could have substituted other acceptable security.

The fact that the transaction occurred more than ten years ago is no defense. There is no statute of limitation on an ethics violation. However, the time interval has clouded the picture and to some extent prejudiced respondent's ability to defend against the charge. We accord him the benefit of a doubt.

### Respondent's borrowings from Berney.

Respondent admittedly became indebted to Berney in 1962 and 1963 for substantial sums of money. The indebtedness was recast on several occasions, but respondent was never able to make good on the terms of payment. Finally Berney retained another attorney who sued re-

spondent in a civil action and obtained judgment against respondent for some $15,800 plus interest and costs. No part of the judgment has been paid.

The Committee found that respondent was derelict in the duty and obligation he owed his client in engaging in financial transactions, and abused the trust and confidence reposed in respondent by his client.

We find it unnecessary to set forth the factual details of the numerous transactions involved. The basic borrowings are ten or more years old and relate to the ill-fated mortgage company venture. As we noted in considering the first charge of the presentment, respondent was handicapped in defending his position by the lapse of time, loss or destruction of records which once existed, and the frailty of memory.

It is not clear that Berney was a trusting client rather than the sophisticated investor which respondent claims he was. Berney had invested $10,000 in the mortgage company. Berney's subsequent loans to the company (guaranteed by respondent), or to respondent for company purposes, were used to bolster the company's financial position. Actually Berney testified that he did not regard "the negotiation of the finances" as unethical on respondent's part. His complaint was that respondent defaulted on his promises to repay and had also stopped payment on repayment checks. (Respondent stopped payment because of a lack of funds.)

In short, at this late date the record is unclear as to whether respondent abused the attorney-client relationship and the trust and reliance which a client places in an attorney.

*Respondent's handling of an automobile accident personal injury and property damage claim for Berney.*

The accident, a two car collision, happened on January 20, 1965. The next day Berney retained respondent to handle the case. Respondent said he was so busy with other

matters that he had to turn the claim over to another attorney, whose name he did not remember, and he did not realize suit had not been started until Berney's new lawyer asked for the file. The only documentary evidence of a communication with the insurance carrier is a copy of a letter written by respondent to the carrier after the statute of limitations had run on the personal injury claim. Berney said that in the meantime respondent led him to believe that a settlement was being negotiated.

Finally Berney retained another lawyer to handle the matter, suit was filed against the driver of the other vehicle and a judgment recovered for property damage. Berney's personal injury claim was dismissed as barred by the statute of limitations.

Berney then instituted a malpractice suit against respondent. Respondent answered but did not defend at trial and ultimately Berney recovered a judgment against respondent for $2,000 and costs which remains unpaid.

Respondent does not seriously question the findings set forth in the presentment as to this matter. His inattention to his professional obligation in his handling of Berney's claim, with resultant damage to the client, is beyond question. See DR 7-101(A)(1)(2)(3).

The third charge set forth in the presentment having been sustained, we consider appropriate discipline. Respondent's dereliction, while substantial, does not involve moral turpitude. He has been an attorney for more than 35 years and, according to the record, enjoys a good reputation at the bar and in the community. Considering all circumstances, we conclude that justice will be served, and the public interest protected, by the imposition of a reprimand.

Respondent is hereby reprimanded for his conduct.

*For reprimand*—Chief Justice WEINTRAUB, Justices JACOBS, PROCTOR, HALL, MOUNTAIN and SULLIVAN and Judge CONFORD—7.

*Opposed*—None.