Argued May 8, accused permanently disbarred September 5, petition for rehearing denied September 25, 1975

IN RE COMPLAINT AS TO THE CONDUCT OF
## DONALD F. BACH, *Accused.*
539 P2d 1075

*William E. Hurley* of Bernard, Hurley, Hodges & Kneeland, Portland, argued the cause and filed a brief for accused.

*John L. Luvaas,* Eugene, argued the cause for Oregon State Bar. With him on the brief was Stephen A. Hutchinson, Eugene.

PER CURIAM.

The Oregon State Bar filed 23 specific charges against the accused. Generally, the accused is charged with (1) failing to maintain adequate records and accounts of trust assets; (2) making improper loans of trust assets to clients and other persons who were not beneficiaries of the trust; and (3) misappropriating trust assets. The accused's amended answer admits making many of the loans and that he used trust assets to secure a personal obligation. The trial committee found the accused guilty of mishandling his client's trust account which "resulted in a substantial loss to his client" and recommended that the accused be permanently disbarred.

The accused's client was an alcoholic and spendthrift. She was under the protection of a conservatorship until 1965. The accused first met his client when he successfully represented her at a competency hearing in 1964. Thereafter, the accused, at his client's request, obtained the termination of the conservatorship. At about the same time, the accused and his client executed a trust agreement naming the accused as trustee of a support trust for the benefit of the client. The conservatorship assets, approximately $168,000 in real and personal property, were then conveyed to the accused as trustee. The accused also continued to act as attorney for his client.

A sister of the accused's client testified that the accused's client refused to permit others to interfere with her affairs because she "trusted him [the accused] and he was the only one that was going to help her." The accused did not always maintain a reciprocal attitude toward his client. Mr. Bach's secretary stated that the accused described his client as "a grouchy, old drunk I give money to every week."

During the investigation and at trial the ac-

cused was unable to produce records sufficient to reflect his management of the trust. The only fact which can be established with any certainty is that the trust fund is near exhaustion. The accused's accountant was unable to prepare a proper accounting with the meager records available. According to the accused, he did not maintain complete records because "I have carried this stuff basically in my head and I basically have known where everybody was, I thought."

The accused attributes his inability to produce complete records to a fire in his warehouse, to moving, to the childbearing activities of his secretary and to other sundry reasons. This does not adequately explain the absence of records which the accused might have used to compute regular accountings for his client. Since the accused never rendered an accounting to his client since the creation of the trust in 1965, it is reasonable to assume that the accused did not maintain records necessary for the preparation of accountings as required by the decisions of this court.

■ The accused bore the fiduciary obligations of the office of trustee and counsel. It is elementary that the accused had a duty to maintain complete records and to render appropriate accountings to his client. Disciplinary Rule 9-102(B); *Wood v. Honeyman,* 178 Or 484, 555-56, 566, 169 P2d 131 (1946). There is no evidence that excuses the accused from his obvious breach of duty.

Next, the accused admits that he loaned trust assets to his employes, to a former law associate and to some of his other clients.[1] *See In re Dugan,* 272 Or 708, 538 P2d 938 (1975). In addition, the ac-

---

[1] Some of these clients are "good buddies" of the accused. One of the participants in these transactions is a corporation, now bankrupt, which was organized by the accused and one of his other clients. The accused served as officer and director of the corporation at various times.

cused admits that he applied trust property to secure a personal obligation. *See In re George C. Staples,* 259 Or 406, 410, 486 P2d 1281 (1971). Except for the accused's testimony, there is no evidence that these transactions were authorized by the accused's client.[⑨] Moreover, independent legal advice was neither available nor recommended to the accused's client.

It is unnecessary to set forth the details of the various transactions which transpired over the years. Suffice to say that the major loans proved to be disastrous investments. The "security," if any, obtained for most of the loans was of dubious value. Bankruptcies, poor management, overreaching and the general conduct of the accused could guarantee but one result — successive, unrecoverable losses to the trust fund. Although there is evidence that repayment of some of the loans and other receivables was made to the accused as trustee, the accused's records do not indicate whether the trust was properly credited, if at all, with these receipts.

The accused also permitted his client, a known spendthrift, to enter into questionable business transactions with his other clients and friends. We can find no evidence that the accused ever attempted to rectify any of these situations or to intercede on behalf of his client.

There is evidence that the accused attempted to hinder the Bar in its investigation of his affairs in connection with his client's trust account. His client and beneficiary of the trust had moved to Estacada.

---

[⑨] The trust agreement also authorizes the disposition of trust assets by the trustee as the settlor-beneficiary may direct *in writing.* The accused contends that his client may have "waived" the requirement of written authorization because she once found written authorizations "a lot of nonsense." The difficulty with this defense is that it is impossible for us to determine whether the accused was acting under the express authorization of his client or under his general powers as trustee.

The accused had another client in the used car and trailer business, to whom he had loaned a substantial sum of money from the trust funds, come to his office. The friend who had borrowed the money was to take a check to the beneficiary of the trust at Estacada and while doing so the friend prevailed upon the beneficiary to instruct the accused "* * * that any of our transactions were privileged communications * * *." This was seven to ten days before the accused's testimony was taken in connection with the charge against him. Also, the accused's former secretary testified that at about the time of the Bar's investigation, the files containing information pertinent to this inquiry disappeared from the accused's office. Under the facts presented to us we can only conclude that the accused's conduct regarding the management of the trust assets was patently improper.

Third, the record is replete with unexplained transactions wherein trust assets were "paid" to the accused as "legal fees." There are instances where the accused was entitled to reasonable fees for handling his client's affairs as her trustee and counsel. However, as the record indicates, a substantial portion of the accused's "legal fees" was generated by the multifold transactions which took place between the accused and his many friends or clients.

The accused does not offer evidence of the nature of the legal services rendered but testified that his arrangement with this client, as to fees, was different from that with his usual clients. Nor does the accused justify the amount of his "legal fees." The accused's response is that "it would be silly" to have maintained a regular schedule of fees and services. Some of the fees were paid by direct charges against the trust; in other instances the accused simply retained monies which came into his possession as trustee. As the Bar states, there is an interesting

correlation between deficiencies in the trust account and the amount of the accused's "legal fees."

In *In re Irwin,* 162 Or 221, 238-41, 91 P2d 518 (1939), we held that an accused's failure to account for funds in his possession as trustee for his client constituted grounds for disciplinary action. In particular, we rejected the accused's contention that he could properly withhold such sums as attorney fees where his retention of his client's money was not justified by the evidence. We conclude in this case that the fees were either unjustified or excessive.

Finally, the Bar also charged the accused with holding himself out as a partner with another when in fact no partnership existed. The evidence shows that the two held themselves out as partners, but did not in fact form a true partnership. Disciplinary Rule 2-102(C) states, "A lawyer shall not hold himself out as having a partnership with one or more other lawyers unless they are *in fact* partners." (Emphasis added.)

From the above and a review of the record in this matter, we reach the inevitable conclusion that the accused did not and cannot render an accounting to his client of her trust funds which have now been largely dissipated. The accused has been in practice for several years and is fully aware of the responsibilities imposed upon him as an attorney. The transactions complained of were not isolated events. They frequently involved the same persons and took place over a period of years. If, in fact, the accused's client was difficult to work with and indifferent to the accused's advice, the accused, by the terms of the trust agreement, had the option to resign as trustee, or to withdraw as attorney, or to recommend the advice of independent counsel. The accused did not elect any of these or other alternatives which were available to him.

"* * * We are not operating a reform institution. The court's duty is to compel compliance with the highest standards of conduct imposed on any profession, business or occupation.

"No one who is admitted into the legal profession may be permitted to sully or destroy the right and need of the public to impose absolute confidence in the integrity of a lawyer. * * * No member of the Bar need consider long wherein his duty lies. True, the rules of professional conduct may fill many pages; the opinions interpreting some of the rules, many volumes. But in the more basic conduct he is called upon to perform, any lawyer knows the simple rules that he must cling to: Simple straightforward honesty and absolute good faith. No less will suffice. Any person fit to be a member of the profession well knows when he has deviated from his obligations. Further exposition of this hard core of the lawyer [sic] duty would be pure embellishment." *In re John W. Pennington,* 220 Or 343, 347-48, 348 P2d 774 (1960).

■ It is the determination of this court that the accused be permanently disbarred from the practice of law in this state.

It is so ordered.