Argued January 7, disbarred January 27, petition for rehearing
denied February 23, 1960

IN RE COMPLAINT AS TO THE CONDUCT OF
## JOHN W. PENNINGTON
348 P. 2d 774

*E. F. Bernard,* Portland, argued the cause and filed brief for petitioner.

*George Luoma,* Roseburg, argued the cause and filed brief for the Oregon State Bar.

PER CURIAM.

This is a disciplinary proceeding. The complaint filed by the Oregon State Bar charges that the accused did willfully and knowingly cause to be filed false and fraudulent federal partnership income tax returns for fiscal years ending September 30, 1952, and September 30, 1953. A third cause of complaint makes a similar charge—that the accused filed fraudulent federal returns for personal income received during the years 1947 to 1954, inclusive.

The trial committee, by a divided decision, found Pennington guilty of all three charges; concluded, as a matter of law, such conduct violated lawful standards of professional conduct. Two members of the trial committee recommended suspension for five years. One member favored no penalty. The Board of Governors concurred in the findings and conclusions but was unable to agree as to penalty. Eleven members of the Board participated. Five voted for permanent disbarment, three voted for three year suspension, and three voted for a two year suspension. The record is, therefore, submitted to the court without a recommendation of the Board of Governors.

It is not contended, nor could it be, that the accused is not guilty of the offenses charged in the complaint. The real problem submitted to us is to determine if Pennington should be disbarred. The heavy burden of that decision must be accepted. We cannot, here, avoid decision. A review of the facts is necessary to indicate the basis of our conclusion that the accused must be disbarred.

Pennington is now about 46 years of age. Except for about three years absence, during the years of World War II, his life has been spent in Lane county. He was admitted to the Bar in 1935. Between that

year and 1945 he engaged in private practice and also served the public as an assistant district attorney and in some capacity with the federal Department of Justice. In 1945 he formed a partnership with a respected lawyer of Eugene, Mr. L. L. Ray. The latter was, and is, almost 25 years senior to Pennington. The partnership was evidenced by a written contract. The agreement provided for an even division of partnership proceeds.

In 1947 Pennington began a course of withholding portions of or all of fees collected by him for partnership business. The money representing these fees he deposited in his own bank and savings accounts. He continued this practice until Mr. Ray in January of 1955, apparently by coincidence only, had reason to suspect such withholding. Mr. Ray confronted, Pennington and the latter admitted that he had taken and withheld partnership funds.

At the time of the first discovery Mr. Ray thought that about $3000 had been withheld from the partnership accounts. Subsequent investigation disclosed that Pennington had taken and secreted over $50,000 during the years mentioned, 1947 through 1954. It is probably already apparent that Pennington not only took the money, but failed to declare and pay personal income taxes on either the money he had taken or the interest it earned. Pennington was also responsible, of course, for false partnership tax returns during the same years.

Pennington offers only one excuse for this long course of deceit. He says that when he started the practice he was producing more of the firm's income than Mr. Ray and chose this method of self help to equalize the income. He testified that he just never thought of the income tax consequences to himself or to his partner.

In his behalf it is said that when confronted he immediately disgorged. He employed an expert tax attorney and accountant. With their assistance Pennington endeavored to, and apparently did, disclose all items of unreported income. He reimbursed Ray for his half of the money secreted; filed amended tax returns and paid all unpaid taxes and interest and disclosed his fraud to the Internal Revenue officials. He was eventually prosecuted in the federal court for the filing of fraudulent partnership returns for the same years claimed in the complaint of the Oregon State Bar filed in this case. He waived indictment, pleaded guilty to an information and was fined $5000 and placed on probation for a period of two years. He has paid all of the costs involved in the accounting and legal procedure made necessary by his acts and otherwise cooperated in a full disclosure of guilt.

Character witnesses of high standing testified before the trial committee. Some of his fellow lawyers of Lane county expressed confidence in Pennington's ability as a lawyer; that they had had no reason to doubt his integrity; that they had no reason to believe he had ever cheated a client, and indicated a belief that he would not transgress again. A minister, a former banker who was then a client of Pennington's, and others gave similar testimony. Able defense counsel argued that none of his conduct has been injurious to the public, and that Mr. Ray has seen fit to forgive the accused and we should do likewise. In fact, the partnership with Mr. Ray continued until 1958 when it was terminated for other reasons. Neither Mr. Ray, as a criminal matter, nor the Oregon State Bar, in this proceeding, has seen fit to prosecute Pennington for embezzlement.

■ We cannot so easily absolve our duty to the pro-

fession and to the public. Sympathy, concern for an innocent family, and the desire to aid the sinner are as old as mans' emotions. The minister who testified here, in good faith we are sure, fervently spoke of the belief that all members of the cloth hold that faith and prayerful hope may guide the errant into an unvarying course of rectitude. In many of the judgments that courts and judges are called upon to make the considerations just briefly mentioned are important and may be decisive. But we must weigh this conduct on a different scale. We are not operating a reform institution. The court's duty is to compel compliance with the highest standards of conduct imposed on any profession, business or occupation.

■ No one who is admitted into the legal profession may be permitted to sully or destroy the right and need of the public to impose absolute confidence in the integrity of a lawyer. Literally thousands of personal and business transactions of unknowing people must be and are entrusted to the hands of some lawyer. Money, property and matters of personal confidence are daily entrusted to the integrity of the individual lawyer. In almost all such instances no bond or security, other than integrity, is required to assure the protection or performance of the trust. No member of the Bar need consider long wherein his duty lies. True, the rules of professional conduct may fill many pages; the opinions interpreting some of the rules, many volumes. But in the more basic conduct he is called upon to perform, any lawyer knows the simple rules that he must cling to: Simple straightforward honesty and absolute good faith. No less will suffice. Any person fit to be a member of the profession well knows when he has deviated from his obligations. Further exposi-

tion of this hard core of the lawyer duty would be pure embellishment.

Nor should the apparent leniency of this court in some prior cases of similar, but not as aggravated character, lull the members of the Bar into a belief that this court is unaware of its obligation.

"* * * Considering the number of cases of this nature which have been before the Bar of this state in the past few years, it appears that the discipline imposed by this Court for failure to file tax returns in compliance with the law have not had a substantial deterrent effect. It is possible that we have not yet established a penalty which is stringent enough to have the desired effect. We shall continue to appraise the problem and if necessary make the violation in these cases so costly that the warning will be heard clearly by all who have been granted the privilege of practicing law in this state." *In re Richard R. Morris,* 215 Or 180, 332 P2d 885.

The admonition just quoted should not be taken as limited to this type of case only. Any form of unprofessional conduct must be measured by the same tests and similar penalties applied. It should not be forgotten. Those members of the Bar that may chance to believe that deviation from high standards is worth the candle should read again:

"The rules promulgated by this court concerning professional and judicial ethics are not merely pious exhortations. They were established to be obeyed and they create rights corresponding to the duties imposed. * * *" *In re Hannon,* 214 Or 51, 59, 324 P2d 753.

We have mentioned that this case is more aggravated than *In re Richard R. Morris,* supra; *In re Means,* 207 Or 638, 298 P2d 983; *In re Claude M. Johns, Jr.,*

212 Or 587, 321 P2d 281. The decision of *In re Maurice C. Corcoran,* 215 Or 660, 664, 337 P2d 307, held that the violation of provisions of the Internal Revenue Code did not, of itself, involve moral turpitude. The opinion stated that: "Whenever, however, an attorney has been convicted of that offense on a plea of guilty or after trial, the evidence should be examined for the purpose of determining whether in fact the conduct of the accused is such as to clothe it with that [fraudulent] character." 215 Or at p 664. We have, accordingly, given consideration to all of the evidence in this case. Despite protestations to the contrary, we cannot, and will not, accept the explanation offered that an attorney, of all people, did not know or understand the legal consequences of the misconduct described. The accused entered a plea to the charge of filing false and fraudulent returns. The crime was a felony. The evidence recited establishes that the conduct of the accused involved moral turpitude.

It is also urged that the accused has taken no funds of any client. He did not disclose taking his partner's funds until called to account. The long practice of taking and secreting funds not his own reflects directly on his right to be placed in a position to handle other people's property. If these were the funds of a client there would be no hesitancy in imposing the most severe sanction; particularly when we consider the intent evidenced by the long course of conduct. The same violation of the fiduciary duty to partnership funds is no less abhorrent.

The acts and conduct of the accused are such that he would not be admitted if now seeking admission to the Bar. It is the determination of this court that the accused, Pennington, be disbarred.

It is so ordered.