No. 50      October 3, 2013      329

IN THE SUPREME COURT OF THE
STATE OF OREGON

In re Complaint as to the Conduct of

W. SCOTT PHINNEY,
OSB #823710,
*Accused*.

(OSB 10-68; SC S060529)

En Banc

On review of the decision of a trial panel of the Disciplinary Board.

Argued and submitted June 5, 2013.

W. Scott Phinney, Tualatin, argued the cause and submitted the brief *pro se*.

Stacy J. Hankin, Assistant Disciplinary Counsel, Oregon State Bar, Tigard, argued the cause and filed the brief for the Oregon State Bar.

PER CURIAM

The accused is disbarred, effective 60 days from the date of this decision.

**PER CURIAM**

In this lawyer disciplinary proceeding, the Bar alleged that the accused, who admitted taking substantial funds from the Yale Alumni Association of Oregon, violated Rule of Professional Conduct (RPC) 8.4(a)(2), which prohibits criminal conduct that reflects adversely on a lawyer's honesty and trustworthiness, and RPC 8.4(a)(3), which prohibits conduct involving dishonesty and misrepresentation that reflects adversely on a lawyer's fitness to practice law. The trial panel found that the accused had violated both rules and imposed the sanction of disbarment. The accused appealed, arguing for a lesser sanction than disbarment. He contends that he did not commit theft because he intended to return the money. The Bar supports disbarment based on the accused's serious misconduct and breach of fiduciary duty. On *de novo* review, we find that the accused violated both rules of professional conduct, and we conclude that disbarment is the appropriate sanction.

The Bar is required to prove the alleged misconduct in this case by clear and convincing evidence, which means "evidence establishing that the truth of the facts asserted is highly probable." *In re Cohen*, 316 Or 657, 659, 853 P2d 286 (1993). This court's statutory review of the trial panel's decision is *de novo*. ORS 9.536(2).

We find the following facts, which are essentially undisputed, by clear and convincing evidence. The accused was admitted to practice law in Oregon in 1982. In 1996, the accused was elected treasurer of the Yale Alumni Association of Oregon (association), a nonprofit organization open to membership by graduates of Yale University. Serving in that capacity on a volunteer basis, the accused was responsible for the association's bank accounts, including bank deposits and the payment of bills. The accused routinely reported on the association's finances to the president of the association and to the membership.

Beginning in early 2007, the accused experienced serious financial difficulties because of a work lay-off, family expenses, and extensive debt accumulated on credit cards that he used to pay his living expenses. The accused began withdrawing funds from the association's bank accounts by writing checks payable to himself or cash; he then deposited

the proceeds into his personal account to pay his own and his family's expenses. Between September 2008 and January 2010, the accused wrote 21 checks for his own use in the total amount of $32,600. The accused knew that he had no right to withdraw the funds and use the proceeds as he did.

Shortly after December 2010, the president of the association discovered a record that the accused had written two checks payable to cash. He confronted the accused who only then admitted that he had been "borrowing" funds from the association. The accused acknowledged at the trial panel hearing that he probably would have continued to withdraw funds for his personal use had the president not discovered the record of the two checks. The president of the association closed the accounts and asked the accused for an accounting. The accounting disclosed that the accused had withdrawn a total of $32,600 from the accounts and that he had periodically paid back into one of the two accounts amounts totaling $18,070. The accounting also disclosed that the accused still owed the association $14,530 at that time.

In August 2010, the Bar filed a formal complaint against the accused, alleging that he had violated RPC 8.4(a)(2) and RPC 8.4(a)(3).[1] The Bar alleged that the accused's conduct constituted theft, in violation of ORS 164.015, reflecting adversely on his honesty, trustworthiness, or fitness as a lawyer in violation of RPC 8.4(a)(2). The Bar also alleged that the accused knowingly had converted association funds for his own use in a manner involving dishonesty and reflecting adversely on his fitness to practice law, in violation of RPC 8.4(a)(3). The accused filed an answer denying both alleged violations and affirmatively alleging "mitigating factors concerning the alleged actions including, but not limited to: no prior discipline, personal and emotional problems, physical disability, and full and free disclosure."

---

[1] Under RPC 8.4,

"(a) It is professional misconduct for a lawyer to:

"*****

"(2) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; [or]

"(3) engage in conduct involving dishonesty, fraud, deceit or misrepresentation that reflects adversely on the lawyer's fitness to practice law[.]"

At the hearing before the trial panel, the accused admitted that his conduct was inappropriate but insisted that he did not commit theft because, at all times, he had intended to repay the association monies as soon as he could. The accused also emphasized that he did not attempt to conceal his misconduct and was forthright after the president of the association discovered his personal withdrawals He also testified that his mother and father had died and he had encountered emotional difficulties during that period of time. He said that he had felt depressed and desperate as a result of his personal and financial circumstances.[2]

After the hearing, two members of the trial panel found that the Bar had proved both violations. In a written decision, the trial panel made findings and concluded that the sanction of disbarment was presumptively appropriate under the circumstances, citing American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA Standards), Standard 5.21.[3] After considering mitigating and aggravating circumstances, the trial panel imposed the sanction of disbarment.

The chair of the trial panel dissented from the majority's finding that the accused had committed a criminal act reflecting adversely on his honesty, trustworthiness, or fitness, in violation of RPC 8.4(a)(2), but concurred with the majority's finding that the accused engaged in dishonest conduct in violation of RPC 8.4(a)(3). The chair also dissented from the majority's decision to disbar the accused; he concluded that the appropriate sanction in this case was a 90-day suspension with reinstatement conditioned on full restitution.[4]

---

[2] The accused testified that, in 2009, he was sick for a month and in the hospital for a week. He also stated that he "couldn't work" and that he had experienced other personal losses around that time.

[3] ABA Standard 5.21 provides:

"Disbarment is generally appropriate when a lawyer in an official or governmental position knowingly misuses the position with the intent to obtain a significant benefit or advantage for himself or another, or with the intent to cause serious or potentially serious injury to a party or to the integrity of the legal process."

[4] The chair drafted an extensive opinion in support of his conclusions. We appreciate the diligent work and thoughtful opinions of trial panel members in this, and all, disciplinary cases.

Before we review the trial panel's conclusion as to the accused's misconduct, we first consider the majority's assessment that the accused was not credible:

"Because of the manner of presenting his testimony, his refusal to acknowledge the wrongful nature of his conduct, his constant rationalizations, and his refusal to accurately characterize his actions, the majority of the panel finds that the Accused is not credible. He attempted to convince the panel that he was simply naïve, but his claimed naiveté seemed contrived to the majority of the panel and is not believable. When questioned by the panel, the Accused frequently equivocated."

In our review of disciplinary cases, this court may give weight to a trial panel's express credibility assessments when those assessments are based on the panel's observations. *In re Hostetter*, 348 Or 574, 596, 238 P3d 13 (2010); *In re Fitzhenry*, 343 Or 86, 103 n 13, 162 P3d 260 (2007). Here, because the trial panel based its assessment on its own observations of the accused's demeanor and the manner in which he testified, we defer to the panel's determination that the accused lacked credibility.

We next review the trial panel's conclusion that the accused committed a criminal act and violated RPC 8.4(a)(2) by taking monies from the association. The majority of the trial panel found that the Bar had demonstrated by clear and convincing evidence that the accused committed theft in taking the association's funds. The majority concluded that the accused "[intended] to deprive the association of its funds and did so for many months and continues to deprive it of its funds."

A person commits theft "when, with intent to deprive another of property or to appropriate property to the per-son *** the person *** [t]akes, appropriates, obtains or withholds such property from an owner thereof." ORS 164.015(1). "With intent" means that "a person acts with a conscious objective to cause the result or to engage in the conduct so described." ORS 161.085(7). Thus, if the requirements of ORS 164.015(1) are otherwise met, a person commits theft if the person acts with the conscious objective to either deprive another of property or to appropriate property from the

person. Based on our *de novo* review, we find that the accused appropriated property in violation of ORS 164.015(1).[5]

As previously mentioned, the accused made 21 separate withdrawals from the bank accounts of the association over the course of 17 months, in the total amount of $32,600.[6] Each time he withdrew association funds in that manner, he directly applied the funds to pay his own and his family's expenses.

The accused acknowledges that it was improper for him to take association funds for his own purposes, but insists that he intended to only temporarily borrow the money. The accused misapprehends the legal requirements for a finding of theft by appropriation in violation of ORS 164.015(1). ORS 164.005(1)(b) provides that "'[a]ppropriate property of another to oneself or a third person' or 'appropriate' means to *** [d]ispose of the property of another for the benefit of oneself or a third person." In that statutory context, the plain meaning of to "dispose of" property as set out in ORS 164.005(1)(b) is "to transfer into new hands or to the control of someone else." *Webster's Third New Int'l Dictionary* 654 (unabridged ed 2002). The question, then, is whether the accused, by withdrawing the association's funds, acted with the conscious objective to dispose of the funds for the benefit of himself and his family.

Here, it is undisputed that the accused acted with a conscious objective to make the personal withdrawals from the association's bank accounts and deposit the funds into his personal bank account. He personally took control of the association's funds and disposed of the funds for his benefit and the benefit of his family. Thus, he committed theft by appropriation each time he withdrew and personally disposed of association funds. When he made the withdrawals

---

[5] Because we find that the accused appropriated property in violation of ORS 164.015(1), we do not find it necessary to determine whether the accused acted with intent to deprive the association of its property under that statute.

[6] The accused repaid a total of $18,070 into one of the bank accounts before the discovery of his misconduct around December 2010. The record indicates that the last month that he repaid money to an association account was September 2009. The accused made no repayments during the two-year period preceding the hearing in August 2011. At the time of the hearing, the accused still owed the association $14,530.

the association's accounts, he acted with an intent to dispose of the funds for his own purposes. That he may have also intended to repay the funds he withdrew at some time in the future does not negate his demonstrated intent to appropriate the funds under ORS 164.015(1). We therefore conclude that the Bar has proved by clear and convincing evidence that the accused's withdrawal and disposition of the association's funds amounted to theft by appropriation in violation of ORS 164.015(1). Further, the Bar has proved that the theft, as described, "reflects adversely on the [accused's] honesty [and] trustworthiness" in violation of RPC 8.4(a)(2).

We next review the trial panel's conclusion that the accused's theft of association funds violated RPC 8.4(a)(3), which prohibits conduct involving dishonesty and misrepresentation that reflects adversely on a lawyer's fitness to practice law. Based on our *de novo* review, we conclude that the Bar proved by clear and convincing evidence that the accused, in appropriating the association's funds for his own personal use, "engage[d] in conduct involving dishonesty, *** deceit [and] misrepresentation that reflects adversely on the [accused's] fitness to practice law," in violation of RPC 8.4(a)(3). The accused's theft of association funds for the accused's personal use over an extensive period of time is flatly inconsistent with adherence to the basic standard of honesty that an attorney must follow in the practice of law. Moreover, the record indicates that the accused gave regular reports about bank account activity and balances to the president and membership of the association from late 2008 through the end of 2010, without disclosing the withdrawals.[7] Thus, the accused, in his role as treasurer, engaged in deceit and also misrepresented the financial position of the association to its membership for over two years.

We now turn to the appropriate sanction in this case based on those violations. We recently summarized our approach to imposing sanctions for professional misconduct as follows:

---

[7] Although the accused referred to the withdrawals that he appropriated as "loans" on the association's check stubs, he maintained possession of the records and did not disclose that information to anyone.

> "We first consider the duty violated, the accused's state of mind, and the actual or potential injury caused by the accused's conduct. *In re Kluge*, 332 Or 251, 259, 27 P3d 102 (2001); ABA Standard 3.0. We next decide whether any aggravating or mitigating circumstances exist. *Kluge*, 332 Or at 259. Finally, we consider the appropriate sanction in light of this court's case law. *Id.* In determining the appropriate sanction, our purpose is to protect the public and the administration of justice from lawyers who have not discharged properly their duties to clients, the public, the legal system, or the profession. *See* ABA Standard 1.1."

*In re Renshaw*, 353 Or 411, 419, 298 P3d 1216 (2013).

The accused's violations of RPC 8.4(a)(2) and (3) breached duties that the accused owed to the public. *See Kluge*, 332 Or at 259 (violation of former iteration of RPC 8.4(a) listed as breach of duty owed to public). We find that the accused acted intentionally in taking the association's funds and in routinely misrepresenting the association's financial status to the president and membership. *See* ABA Standards at 7 ("intent" defined as "the conscious objective or purpose to accomplish a particular result"). Further, the accused caused actual injury to the association by taking $32,600 from association bank accounts and applying those funds to his own personal use. As a result, the association's funds were not available to it to use as the membership saw fit.

Under the ABA Standards, disbarment is the appropriate sanction when a lawyer engages in "serious criminal conduct, a necessary element of which includes *** theft." ABA Standard 5.11(a). Here, the accused committed theft by taking the association's funds, and his criminal conduct was "serious" within the meaning of ABA Standard 5.11(a). Over a period of 17 months, the accused made 21 separate withdrawals from association bank accounts for his own use. The duration of the misconduct, the number of withdrawals, and the total amount of the theft ($32,600) makes this a serious crime. *See Renshaw*, 353 Or at 420 (accused took total of $100,000 in improper distributions from law partners over three-year period of time).

Disbarment is also an appropriate sanction when a lawyer engages in "any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice." ABA Standard 5.11(b). As previously stated, we have found that the accused, as treasurer of the association, routinely misrepresented the association's financial position to the membership and its president over a period of 17 months. During that period of time, he did not disclose that he had taken substantial withdrawals of association funds for his own use. We conclude that the accused's violation of RPC 8.4(a)(3), involving dishonesty and misrepresentation, "seriously" adversely reflects on his fitness to practice law within the meaning of ABA Standard 5.11(b).

Based on the ABA Standards, we determine, preliminarily, that disbarment is the appropriate sanction in this case. We next consider whether mitigating or aggravating factors might affect that determination. We find four aggravating factors. First, the accused committed a criminal act. ABA Standard 9.22(k). Second, the accused engaged in a pattern of repeated thefts (21 withdrawals) over a period of 17 months during 2008, 2009, and 2010. ABA Standard 9.22(c). Third, the accused was admitted to practice in Oregon in 1982 and has substantial experience in the practice of law. ABA Standard 9.22(i). Fourth, the accused acted with a selfish motive. ABA Standard 9.22(b).

Based on the record, we find four mitigating factors. First, the accused has no prior disciplinary record. ABA Standard 9.32(a). Second, the accused engaged in full and free disclosure in the discipline process and he displayed a cooperative attitude toward the disciplinary proceedings. ABA Standard 9.32(e). Third, the accused had repaid a substantial amount of the money he took prior to the discovery of his misconduct.[8] ABA Standard 9.32(d). Fourth, the accused experienced personal and emotional problems

---

[8] Although evidence of repayment by an accused is generally irrelevant to a determination of whether a violation occurred, *see*, *e.g.*, *In re Bartlett*, 283 Or 487, 500, 584 P2d 296 (1978), repayment or restitution may be a mitigating factor in determining the appropriate sanction. Under ABA Standard 9.32(d), the "timely good faith effort to make restitution or to rectify consequences of misconduct" is a factor that may be considered in mitigation.

during the period of time when he violated the rules of professional conduct.[9] ABA Standard 9.32(c).

　　After considering the above aggravating and mitigating factors, we conclude that the sanction of disbarment is appropriate. The accused breached a fiduciary duty when he repeatedly took funds from the association for his personal use. His extensive pattern of theft and his routine misrepresentations to the association for over two years calls into serious question his trustworthiness in handling the money of future clients or others who might trust him as an attorney.

　　The accused, as treasurer of the association, was in a fiduciary relationship as a result of the special confidence placed in him by the association. *See Allen v. Breding*, 181 Or 332, 342, 181 P2d 783 (1947) ("Fiduciary relationship includes not only legal and technical relations. It is found wherever there is confidence reposed on one side and resulting superiority and influence on the other."); *see also Patterson v. Getz*, 166 Or 245, 287, 111 P2d 842 (1941) ("A 'fiduciary' or 'confidential' relation *** exists 'in all cases where there has been a special confidence reposed in one who in equity and good conscious is bound to act in good faith and with due regard to the interests of the one reposing the confidence.'" (quoting *Anderson v. Watson*, 141 Md 217, 118 Alt 569 (1922)).[10] Here, the accused breached a fiduciary duty of trust and confidence to the association.

---

[9] The trial panel did not find that the accused's personal and emotional problems were a mitigating factor. However, as previously mentioned, the accused testified at some length about a number of unfortunate setbacks in his life that caused him extreme difficulties, including emotional issues. Based on our *de novo* review, it does not appear that the trial panel questioned the accused's credibility with respect to that specific testimony. We find the accused's testimony credible on this subject and find that his personal and emotional problems are a mitigating factor. As will be explained, we do not consider that that mitigating factor, even when combined with other mitigating factors, is of sufficient weight to reduce the presumptive sanction in this case.

[10] *Black's Law Dictionary* (9th ed 2009) defines the concepts of "fiduciary relationship" and "fiduciary duty" as follows:

"**fiduciary relationship.** (1846) A relationship in which one person is under a duty to act for the benefit of another on matters within the scope of the relationship. • Fiduciary relationships—such as trustee-beneficiary, guardian-ward, principal-agent, and attorney-client—require an unusually high degree of care. Fiduciary relationships usu. arise in one of four situations: (1) when one person places trust in the faithful integrity of another, who as a result

Finally, we turn to prior decisions of this court most pertinent to our resolution of this case. In *Renshaw*, we recently decided that disbarment was appropriate where a managing partner of a law firm took a total of $100,000 from his partners over a three-year period by making unauthorized distributions of profit and using his firm's line of credit to pay personal expenses. In doing so, we rejected the suggestion that the theft of partnership funds was not as serious a transgression as the theft of client funds. We quoted from *In re Pennington*, 220 Or 343, 349, 348 P2d 774 (1960), as follows:

> "'It is also urged that the accused has taken no funds of any client. He did not disclose taking his partner's funds until called to account. The long practice of taking and secreting funds not his own reflects directly on his right to be placed in a position to handle other people's property. If these were the funds of a client there would be no hesitancy in imposing the most severe sanction; particularly when we consider the intent evidenced by the long course of conduct. The same violation of the fiduciary duty to partnership funds is no less abhorrent.'"

*Renshaw*, 353 Or at 421.

The accused's breach of fiduciary duty to the association in this case similarly supports disbarment. Here, we also have the substantial theft of funds by an attorney over an extended period of time. The accused's breach of duty in taking the funds of an organization relying on him is unacceptable. As we said in *Pennington*:

---

gains superiority or influence over the first, (2) when one person assumes control and responsibility over another, (3) when one person has a duty to act for or give advice to another on matters falling within the scope of the relationship, or (4) when there is a specific relationship that has traditionally been recognized as involving fiduciary duties, as with a lawyer and a client or a stockbroker and a customer."

*Black's* at 1402 (boldface type in original).

> "**fiduciary duty**. \*\*\* A duty of utmost good faith, trust, confidence, and candor owed by a fiduciary (such as a lawyer or corporate officer) to the beneficiary (such as a lawyer's client or a shareholder); a duty to act with the highest degree of honesty and loyalty toward another person and in the best interests of the other person (such as the duty that one partner owes to another)."

*Black's* at 581 (boldface type in original).

"No one who is admitted into the legal profession may be permitted to sully or destroy the right and need of the public to impose absolute confidence in the integrity of a lawyer. Literally thousands of personal and business transactions of unknowing people must be and are entrusted to the hands of some lawyer. Money, property and matters of personal confidence are daily entrusted to the integrity of the individual lawyer. In almost all such instances no bond or security, other than integrity, is required to assure the protection or performance of the trust. No member of the Bar need consider long wherein his duty lies. True, the rules of professional conduct may fill many pages; the opinions interpreting some of the rules, many volumes. But in the more basic conduct he is called upon to perform, any lawyer knows the simple rules that he must cling to: Simple straightforward honesty and absolute good faith. No less will suffice."

220 Or at 347.

Other comparable cases that support disbarment in this case are: *In re Murdock*, 328 Or 18, 968 P2d 1270 (1998) (disbarment appropriate when law firm associate knowingly embezzled more than $9,000 from law firm); *In re Laury*, 300 Or 65, 706 P2d 935 (1985) (disbarment appropriate when attorney converted $1,100 in client funds to his own personal use); and *In re Pierson*, 280 Or 513, 571 P2d 907 (1977) (disbarment appropriate when attorney converted $56,000 from client trust funds to his own personal use notwithstanding full restitution of the funds by the attorney).

In his dissent below, the chair of the trial panel concluded that the accused's conduct should be viewed similarly to the misconduct sanctioned in *In re Kimmell*, 332 Or 480, 31 P3d 414 (2001). We disagree. In *Kimmell*, an attorney committed the theft of a jacket from a department store and was suspended from the practice of law for six months. We concluded that the attorney had committed a criminal act that reflected adversely on his honesty and affirmed the six-month suspension. This case is significantly distinguishable. The most critical distinction is that Kimmell "was not acting in a fiduciary capacity when he committed the theft at issue." *Id.* at 491. We observed in *Kimmell* that, "[i]n most instances, a lawyer who misappropriates property or funds

while acting in a fiduciary capacity will be sanctioned more severely than a lawyer who misappropriates property or funds outside of that capacity." *Id.* (footnote omitted). Moreover, *Kimmell* involved the single theft of a jacket, not numerous withdrawals of substantial funds from bank accounts over an extended period of time, coupled with numerous misrepresentations of financial status made to a reliant organization. Here, the accused committed the substantial theft of funds from an organization to which he owed a fiduciary duty of utmost honesty, confidence, and trust.

The accused is disbarred, effective 60 days from the date of this decision.