Submitted on the record and briefs February 13, accused suspended 91 days
March 24, 1987

In re Complaint as to the Conduct of

# KENNETH A. MORROW,
*Accused.*

## (OSB 85-76; SC S33470)

734 P2d 867

George A. Riemer, Lake Oswego, filed the brief for the Oregon State Bar.

Kenneth E. Morrow, Eugene, filed a brief on his own behalf.

PER CURIAM

## PER CURIAM

The main issue in this disciplinary proceeding against a member of the Oregon State Bar concerns the appropriate sanction to be imposed. A Trial Panel of the Disciplinary Board found that in 1978 the accused had engaged in improper conduct toward his clients in litigating a business matter, contrary to a number of disciplinary rules, and recommended that the accused be publicly reprimanded and "placed on probation" for a period of two years under conditions specified in the panel's opinion. The Oregon State Bar filed a petition for review in this court, contending that the accused's violations call for a period of suspension. A second issue concerns the effect of the eight-year lapse of time between the accused's conduct and the disciplinary proceedings.

The disciplinary violations are not seriously disputed, although the accused characterizes his conduct somewhat differently from the Bar's charges. We need not set out the facts in detail. In summary, the Bar charged and the Trial Panel found that the accused represented two clients in the dissolution of a partnership, in the sale of partnership property, and in subsequent litigation of a partnership accounting. The clients instructed the accused to file an appeal. The accused did not believe that the appeal was in the clients' interest, but they insisted. The accused falsely advised the clients that he was prepared to file an appeal, that he had moved for an extension of time to do so and that he in fact had filed an appeal, though he knew he had not done so. The clients relied on the accused's representations and did not learn that no appeal had been filed until it was too late to do so.

■ The panel concluded, and we agree, that the accused's conduct violated DR 1-102(A)(3)(*former* DR 1-102(A)(4))(conduct involving dishonesty, fraud, deceit or misrepresentation), DR 6-101(B)(*former* DR 6-101(A)(3))(neglect of a legal matter), DR 7-101(A)(1)(intentional failure to seek the lawful objectives of a client), and DR 7-101(A)(2)(intentional failure to carry out a contract of employment). The panel also made some further findings of fact which it presumably considered relevant to the sanction, as they do not bear on the violations. These findings were that the accused in 1981 confessed judgment in favor of his clients

in the sum of $80,000 for punitive damages and has made payments in conformance to the terms of that judgment, as well as waiving some $6,000 in attorney fees, that a malpractice action by the clients resulted in a verdict for the accused, that the accused was disciplined in 1984 for somewhat similar conduct in another case contemporaneous with the conduct in this case, and that there appears to have been no other complaints of similar nature during the past six years.

The panel described the accused's violation as being "of a very serious nature." In explaining its proposed sanction of a public reprimand and probation on stated conditions, the panel noted that sanctions are not designed as punishment but as protection of the public and of clients, that the lapse of time between the violations and the disciplinary proceedings was "a factor to be taken into consideration," and that the panel was convinced that "there is little likelihood of the Accused repeating these mistakes." The panel stated that if the accused's misconduct had occurred recently, or subsequent to the discipline imposed in the 1984 proceeding, the panel "would not have hesitated to impose the severest sanction upon the accused."

The Bar urges that the accused be suspended for ten months, a period at which it arrives by the following reasoning. The earlier disciplinary proceeding against the accused resulted in a 60-day suspension for somewhat similar violations. *In re Morrow,* 297 Or 808, 688 P2d 820 (1984). The accused had procrastinated in pursuing a tort claim for his client, had not made an adequate investigation, and finally failed to commence the action before the period of limitation expired. He then intentionally failed to disclose this fact to his client and planned to pay from his own funds what the client expected to win in the case, but he abandoned this plan because he recognized that the client should have legal advice as to the value of his claim. The client ultimately consulted another lawyer, and the accused settled and paid the client's malpractice claim. This court found that the accused had violated *former* DR 1-102(A)(4)(conduct involving dishonesty, fraud, deceit, or misrepresentation) by misleading his client as well as neglecting matters that the client entrusted to him, contrary to *former* DR 6-101(A)(3).

In deciding on the sanction, we reviewed seven comparable disciplinary cases that had resulted in discipline ranging from reprimands to a one-year suspension, which was imposed in *In re Berg*, 276 Or 383, 554 P2d 509 (1976). *In re Morrow, supra*, 297 Or at 819-21. We noted that the charges against Berg, which involved several different clients, were similar to the case then before the court, "but there were five charges rather than two as in this case." *Id.* at 820. From this observation, the Bar reasons that if the present charges had been known to it and to the court in 1984 and had been consolidated for hearing, the accused, like Berg, would have been suspended for one year. Therefore, having been suspended for sixty days on the charges in the first proceeding, the accused now should be suspended for ten more months.

The accused filed a motion to dismiss the present charges on grounds of laches. We agree with the Trial Panel that the lengthy delay from the accused's conduct to the filing of charges is not a defense but bears on the proper sanction. The proceeding is not a private dispute between the Bar and one of its members. The accused's memorandum in support of the motion recognized that "the primary purpose of professional disciplinary proceedings is to protect the public. * * * If the conduct of a member of the Bar disqualifies him from the practice of law, it would not be in the public interest to dismiss the disciplinary proceedings for no reason other than that the Bar's failure to prosecute them with the proper dispatch," *citing In re Phillip Weinstein*, 254 Or 392, 394, 459 P2d 548 (1969). The memorandum cites some opinions of other courts suggesting that staleness may bar disciplinary proceedings if the delay has caused prejudice and in any event may bear on the proper sanction. *See, e.g., Yokozeki v. State Bar*, 11 Cal 3d 436, 450, 521 P2d 858, 113 Cal Rptr 602 (1974); *In re Sarbone*, 63 NJ 94, 96, 304 A2d 734 (1973). A standard for sanctions recommended by the American Bar Association states that delayed proceedings can be a mitigating factor.[1]

In the present case there is no claim that the lapse of six years (through no fault of the Bar) between the events

---

[1] American Bar Association, *Standards for Imposing Lawyer Sanctions* § 9.32(i) (1985). *See also In re Luebke*, 301 Or 321, 333-34, 722 P2d 1221 (1986)(setting forth the ABA standards for aggravation and mitigation and discussing their application).

charged and the initiation of disciplinary proceedings prejudiced the accused's defense; however, the belated imposition of a suspension may be prejudicial in the sense that it implies a judgment about the accused's present professional reliability based solely on conduct now nearly nine years in the past.

Considerations of this kind entered into the Trial Panel's conclusions on the appropriate sanction. Its opinion states:

> "It is also clear to the Panel that in taking such actions, the Accused was not motivated by any reasons of personal gain or intended harm to the clients, but rather because he honestly believed that filing of the appeal would be contrary to the clients' best interests. The Panel is further convinced that there is little likelihood of the Accused repeating these mistakes.

> "As noted above, the Accused was suspended for a sixty day period for similar conduct occurring at roughly the same time in *In re Morrow*, 297 Or 808 (1984). Evidence at the hearing established that the imposition of such sanction has weighed heavily with the Accused and caused him a great deal of public and private suffering. * * *

> "Further, there is no evidence in the record to indicate that any meritorious claim against the Accused has been filed in recent years involving misrepresentation, dishonesty or neglect of a legal matter."

The Trial Panel also cited in support of its recommended sanctions the *Standards for Imposing Lawyer Sanctions* prepared by the American Bar Association and this court's decisions in *In re Snyder*, 276 Or 897, 559 P2d 1273 (1976), and *In re Greene*, 276 Or 1117, 557 P2d 644 (1976).

In several recent disciplinary cases this court has consulted the cited standards not as binding norms for discipline, but as a helpful catalog of considerations that bear on the choice of sanctions. *See In re Luebke*, 301 Or 321, 332, 722 P2d 1221 (1986); *In re Bristow*, 301 Or 194, 206 n 3, 721 P2d 437 (1986).

The standards focus attention on the nature of the ethical duty violated, the lawyer's mental state, the extent of the actual or potential injury from the lawyer's misconduct, and the presence of aggravating or mitigating circumstances.

In the present case, the violation concerned an ethical duty of central importance to a lawyer's professional relationships: the duty of truthfulness. The violation was even more severe than it was in the accused's other contemporaneous misconduct that came before the court in 1984 because it involved outright lies to his clients concerning steps that the accused said he had taken but had not, rather than misrepresentation by silence. We agree with the Bar that if the charges had been known and tried at the same time, the sanction in that proceeding would have been more severe, though we do not speculate whether it would have been as long a suspension as the Bar contends.

The mental element in the accused's conduct during the period in question appears to have been compounded of an unwillingness to limit the number of cases that he undertook to litigate at the same time, *see In re Morrow, supra,* 297 Or at 814, and an unwillingness candidly to tell his clients that he would not do something that they wanted him to do but that he thought of little value or, in the present case, even against his clients' best interests. He was willing to deceive his clients but not with a motive to defraud or otherwise to harm them.

The injury done to the accused's clients was not financial but only their understandable disappointment and indignation at the accused's behavior. The fact that the accused later settled with his clients does not enter into that calculation, but there is no evidence that they lost money from his failure to file the appeal they desired; the verdict in his favor in the clients' malpractice action suggests the contrary.

Two of the aggravating factors listed in section 9.22 of the American Bar Association's standards count against the accused: that his misconduct was part of a "pattern" (if two known cases can make a "pattern,") and that he has had "substantial experience in the practice of law." Among the factors in mitigation listed in section 9.32, we find "absence of a prior disciplinary record" (at the time of the conduct charged[2]), "absence of a dishonest or selfish motive" (except

---

[2] The Bar's counsel questioned the accused about complaints that other clients had made against him, but these are not a "disciplinary record." The accused testified that the nature of his practice has tended to attract a disproportionate number of chronic litigators and lawyer-shoppers who are prone to sue or complain about their previous lawyers.

the selfish motive to earn fees beyond the caseload that his office was equipped to manage properly), "timely good faith effort to make restitution or to rectify consequences of misconduct" after the clients complained, "full and free disclosure to disciplinary board or cooperative attitude toward proceedings" (by which we mean candor about facts, not differential sanctions based on admission or denial of guilt under the Disciplinary Rules), and "delay in disciplinary proceedings," already mentioned.

These factors are not quantified. They do not relieve Trial Panels or this court of the burden of judgment; they only help to organize the task. The Bar argues that existing rules do not provide for combining a public reprimand with a period of probation. It questions what sanction would follow noncompliance with the terms of probation and maintains that a lawyer should know the contingent sanction before embarking on a term of probation.

■ Whether or not the combination of a reprimand with probation is permissible, we agree with the Bar that a reprimand would not be proper in this case. It would give the wrong impression about the gravity of deceitful statements, even when such statements are not intended to win an unfair advantage. *Cf. In re Hiller,* 298 Or 526, 533-34, 694 P2d 540 (1985). Like the charges before us in the 1984 proceeding against the accused, the present charges likely would have merited a suspension of at least two months, perhaps three or four.

The added consideration is the passage of another three years since that time. While we agree with the Bar that a public reprimand would be inappropriate, we also are impressed by the conclusion of the Trial Panel—which had the opportunity to hear and evaluate the accused's testimony as to his motives and his practices since the events of 1979—that a period of probation would adequately protect the public. We conclude that an appropriate sanction is a suspension for 91 days, which will be stayed for a period of probation of two years on essentially the same conditions recommended by the Trial Panel; that is to say, that the accused provide quarterly reports to the Oregon State Bar of his caseload status and proof of maintaining a continuous system of calendaring limitation periods and docket controls and that he

engage in no conduct that involves dishonesty, misrepresentation, or neglect of a legal matter entrusted to him.

The accused is suspended from the practice of law for 91 days, stayed on the conditions stated for a period of probation of two years. The Oregon State Bar may recover costs.