Argued and submitted May 18, accused reprimanded June 17, reconsideration denied August 24, 1993

In re Complaint as to the Conduct of

# RICHARD D. COHEN,
*Accused.*

(OSB 91-138; SC S39908)

853 P2d 286

Mary A. Cooper, Assistant Disciplinary Counsel, Oregon State Bar, Lake Oswego, argued the cause and filed the briefs.

Marvin S. Nepom, Portland, argued the cause and filed a response brief for the accused.

Before Carson, Chief Justice, and Peterson, Gillette, Fadeley, Unis, and Graber, Justices.

PER CURIAM

## PER CURIAM

This is a lawyer disciplinary proceeding. The Oregon State Bar charges that the accused represented two clients whose interests were in likely conflict without making required disclosures and that he continued to represent those clients when their interests were in actual conflict, in violation of DR 5-105(E).[1] The trial panel found the accused not guilty.

■ The Bar sought review pursuant to BR 10.1, BR 10.3, and ORS 9.536(1). We review the record *de novo*. ORS 9.536(3). The Bar has the burden of establishing ethical misconduct by clear and convincing evidence. BR 5.2. "Clear and convincing evidence" means evidence establishing that the truth of the facts asserted is highly probable. *In re Johnson*, 300 Or 52, 55, 707 P2d 573 (1985). We find the accused guilty of violating DR 5-105(E) and reprimand him.

---

[1] DR 5-105(A) provides in part:

"A conflict of interest may be actual or likely.

"(1) An 'actual conflict of interest' exists when the lawyer has a duty to contend for something on behalf on one client that the lawyer has a duty to oppose on behalf of another client.

"(2) A 'likely conflict of interest' exists in all other situations in which the objective personal, business or property interests of the clients are adverse. A 'likely conflict of interest' does not include situations in which the only conflict is of a general economic or business nature."

DR 5-105(E) provides:

"Except as provided in DR 5-105(F), a lawyer shall not represent multiple current clients in any matters when such representation would result in an actual or likely conflict."

DR 5-105(F) provides:

"A lawyer may represent multiple current clients in instances otherwise prohibited by DR 5-105(E) when such representation would not result in an actual conflict and when each client consents to the multiple representation after full disclosure."

*Former* DR 10-101(B) provided:

" 'Full disclosure' means an explanation sufficient to apprise the recipient of the potential adverse impact on the recipient, of the matter to which the recipient is asked to consent. Full disclosure shall also include a recommendation that the recipient seek independent legal advice to determine if consent should be given. Full disclosure shall be contemporaneously confirmed in writing."

*Current* DR 10-101(B) is materially identical to *former* DR 10-101(B).

## FINDINGS OF FACT

The accused was admitted to practice law in Oregon in 1979. In late March 1989, Wife telephoned the accused and asked for legal assistance with a juvenile case and a possible criminal case. Both matters arose out of an incident that took place on September 2, 1988, in which Husband beat and injured Wife's nine-year-old daughter from a previous marriage. Husband and Wife also had two children together. A petition had been filed in juvenile court regarding the nine-year-old, and criminal charges were expected to be brought against Husband.

Husband and Wife consulted the accused in person on April 3, 1989. Wife expressed fear that the children might be taken away from her. The accused concluded, however, that "[t]he juvenile proceeding didn't pose a realistic threat after eight months of nonattention of the juvenile system."[2] With respect to the criminal proceeding, Husband told the accused that he did not want to go to trial; "he was quite contrite, and he wanted help."

The accused concluded that no conflict existed between Husband and Wife as of April 3, 1989, because "[t]hey wanted to keep their family together," although they seemed "aware that the likely result of the criminal proceeding would be that [Husband] would be ordered out of the home." The accused advised Husband and Wife on April 3 that he could not represent them both "unless they were in complete agreement about what they wanted." The accused did not put that advice in writing. He agreed to represent Husband and Wife and opened two files, "Criminal" and "Juvenile."

On April 7, 1989, Husband was indicted for criminal mistreatment in the first degree and released on his own recognizance. On or about June 22, 1989, Wife telephoned the accused to express "a concern about [Husband's] not going regularly to his counseling at the Men's Resource Center

---

[2] The quotations in the text are from the accused's testimony. In making our findings of fact, we have relied on the testimony of the accused and on the exhibits. We have not relied on the testimony of Wife, because the trial panel found that she was not credible.

which was anger management counseling." In that conversation, Wife said that she was "going to call the authorities." From Wife's "tone and the way she was saying things," the accused knew "that her purpose would not be as an ally of her husband in making those phone calls." The accused knew that Husband was required to attend the counseling as a condition of continued release on recognizance. The accused testified that he told Wife that she "had a right to make her own decision and go her own way" but that he would have to withdraw from representation if Husband and Wife no longer had the same goal. He testified that Wife responded that, "[i]f [Husband] will do what he was supposed to do, we're still a team."

In June 1989, before the plea hearing in Husband's criminal case, the accused received the police report concerning the incident of criminal mistreatment involving the nine-year-old. The police report identified Wife as the person who had contacted the police initially about the incident.

On June 30, 1989, Husband entered a plea of guilty to the charge of criminal mistreatment. Sentencing in the case was set for late September 1989. In late August 1989, the accused received and read a copy of a presentence investigator's report concerning Husband. The report stated in part:

> "[Wife's] moods and attitudes toward her husband fluctuate on a near daily basis. In talking with her on the phone prior to the interview in the office, she was very upset saying that the Defendant had been abusing her son and that he was refusing to go to anger management classes. * * * [Wife] then called the day after the interview and said that the defendant was threatening the family * * *."

After reading that report, the accused spoke with Husband and Wife to determine whether they still shared the common goal of keeping Husband out of jail and in the family home. Husband and Wife assured the accused that they did. The accused concluded that there was "[a] unification of interest again," and he continued to represent both parties thereafter, including representing Husband in sentence negotiations. At the sentencing hearing, the district attorney recommended a suspended sentence with probation and counseling. The court did not accept that recommendation, but sentenced Husband to six months in jail.

## LIKELY CONFLICT OF INTEREST

At the outset of the representation of Husband and Wife, there was a likely conflict of interest between them. On April 3, 1989, when the accused first met with Husband and Wife, he was aware of Wife's concern that her children might be taken away from her in juvenile proceedings if Husband remained in the home. That is, Wife had expressed a concern that was inimical to Husband's interests, even while stating that she and Husband had a common goal in seeking legal representation. Moreover, Wife's "objective personal * * * interests," DR 5-105(A)(2), as mother and guardian of her children, were adverse to Husband's objective personal interest in seeking to minimize the consequences of his past criminal behavior within the home.[3]

In the face of that likely conflict of interest, the accused failed to make a full disclosure, as required by DR 5-105(F) and as defined by *former* DR 10-101(B). The accused's explanation to the parties at the outset of the representation, as depicted in his testimony, was inadequate to apprise Husband and Wife of the potential adverse impact of joint representation. In addition, the disclosure was not confirmed contemporaneously in writing. Full disclosure was, in fact, never made at any time during the representation. As a result of that conduct, the accused violated DR 5-105(E).

## ACTUAL CONFLICT OF INTEREST

When the accused received the presentence report, he was made aware of an actual conflict of interest. Indeed, the accused testified:

"Q. Did you at that time consider that you possibly had a conflict of interest?

"A. Oh, yeah.

"Q. An actual conflict of interest?

"A. If those statements were statements that she was asserting were true, I had an actual conflict of interest."

---

[3] *Cf. In re McKee*, 316 Or 114, 134, 849 P2d 509 (1993) (Peterson, J., concurring) (under DR 5-105(A), (E), and (F), "[a] 'likely conflict' * * * is present between spouses in a marital dissolution proceeding").

As noted above, the accused also testified that he concluded that there was "[a] unification of interest *again*," after discussing the presentence report with Husband and Wife. (Emphasis added.) That testimony reflects the accused's understanding from reading the report that Husband and Wife did not have a consistent "unification of interest."

The presentence report informed the accused that one of his clients, Wife, was taking active steps against his other client, Husband, which could — and later apparently did — have a prejudicial impact on Husband's legal interests. The accused knew, on reading the report in late August 1989, that he would be called on to contend for opposing resolutions of the pending matters on behalf of Husband and Wife. That was an actual conflict as defined in DR 5-105(A)(1). Nonetheless, the accused continued thereafter to represent Husband in the criminal case and Wife in the juvenile proceedings. In doing so, he violated DR 5-105(E).

## SANCTION

In deciding on the appropriate sanction, this court refers for guidance to the American Bar Association Standards for Imposing Lawyer Sanctions (ABA Standards). *In re White*, 311 Or 573, 591, 815 P2d 1257 (1991). ABA Standard 3.0 sets out the factors to consider in imposing sanctions: the duty violated, the lawyer's mental state, the actual or potential injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

The accused violated the duty owed to his clients to avoid conflicts of interest. ABA Standard 4.3.

The accused acted negligently in failing to provide full disclosure at the outset of the representation. *See* ABA Standards (June 17, 1992) at 7-8 (a lawyer acts negligently when the lawyer fails to heed a substantial risk that a circumstance exists or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation). The accused acted knowingly when he continued to represent both Husband and Wife after an actual conflict of interest came to his attention. *See id.* at 7 (a lawyer acts knowingly when the lawyer acts with conscious awareness of the nature or attendant circumstances of the

conduct but without the conscious objective or purpose to cause a particular result).

The accused caused a potential injury to Wife, whose interest in maintaining custody of her children was not being fully protected. There was no actual injury to either Husband or Wife.

The ABA Standards provide that suspension is generally appropriate when the lawyer knows of a conflict of interest and fails to disclose fully to a client the possible effect of that conflict, causing injury or potential injury to a client. ABA Standard 4.32. A reprimand is generally appropriate when a lawyer is negligent in determining whether the representation of a client will adversely affect another client, causing injury or potential injury to a client. ABA Standard 4.33.

We next consider pertinent aggravating and mitigating factors.

There are two aggravating factors. At the time of the hearing, the accused had a prior disciplinary offense, ABA Standard 9.22(a), in that he received an admonition in 1990 for neglecting a legal matter, and he had substantial experience in the practice of law, ABA Standard 9.22(i).

In mitigation, the accused had no dishonest or selfish motive, ABA Standard 9.32(b), cooperated fully in the disciplinary proceedings, ABA Standard 9.32(e), expressed remorse, ABA Standard 9.32(l), and has a good reputation within his area of practice, ABA Standard 9.32(g).

The mitigating factors outweigh the aggravating factors in this case, and the accused's clients were not actually injured. We conclude that a reprimand is the appropriate sanction.

The accused is reprimanded.