Argued and submitted November 4, 1999, accused is reprimanded in 96-129; accused's probation terminated in 95-83 August 10, 2000

## In re·Complaint as to the Conduct of

## RICHARD D. COHEN,
*Accused.*

## (OSB 95-83, 96-129; SC S39908)

8 P3d 953

Jane E. Angus, Assistant Disciplinary Counsel, Lake Oswego, argued the cause and filed the petition and reply brief for the Oregon State Bar. Jeffrey D. Sapiro, Disciplinary Counsel, Lake Oswego, filed a supplemental brief for the Oregon State Bar.

Robert A. Shlachter, Portland, argued the cause for the accused. Richard D. Cohen, Portland, filed the answering brief *pro se*. Robert A. Shlachter and Scott Shorr, of Stoll Stoll Berne Lokting & Shlachter, P.C., filed a joint supplemental brief.

PER CURIAM

Riggs, J., concurred in part and dissented in part, and filed an opinion.

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar (the Bar) seeks review of a decision of a trial panel of the Disciplinary Board that reprimanded lawyer Richard D. Cohen (the accused) for violating Code of Professional Responsibility Disciplinary Rule (DR) 6-101(B)[1] (neglect of a legal matter) and also continued his probation for an earlier violation of that same rule. The Bar seeks imposition of a 60-day suspension for the second violation, to be served consecutively with a previously stayed 120-day suspension for the first violation. The accused admits that he violated DR 6-101(B) in the second matter, but contends that the trial panel reached the appropriate disposition in both matters. For the reasons that follow, we reprimand the accused and terminate his probation.

### FACTS

This proceeding involves two instances of neglect by the accused, the first of which resulted in a stipulation for discipline in 1995 (case 95-83). In that case, the accused neglected the legal matter of a client named Richardson, who had hired the accused in 1992 to pursue a claim against the state for damages caused by a Dammasch State Hospital patient. The accused stipulated that, between November 1994 and March 1995, he had violated DR 6-101(B) by failing to communicate with Richardson and failing to respond to her attempts to communicate with him, failing to pursue the case actively, failing to advise Richardson concerning potential dismissal of the case and his actions on it, and failing to file certain paperwork in the case.

In October 1995, the accused and the Bar entered into a stipulation for discipline, which this court accepted by order in December 1995, *nunc pro tunc* November 1995. In that stipulation, the accused admitted that his conduct, as alleged in the Bar's complaint, had violated DR 6-101(B). He further agreed to accept a 180-day suspension, 120 days of which were stayed, subject to a two-year probationary period

---

[1] DR 6-101(B) provides: "A lawyer shall not neglect a legal matter entrusted to the lawyer."

beginning on the effective date of the stipulation. The stipulation set out a number of conditions of probation, including that the accused comply with all provisions of the Code of Professional Responsibility and that he regularly certify to the Bar that he had brought all his cases to current status. The stipulation also required mental health counseling and supervision of the accused by another lawyer, as probationary conditions, and provided that the accused would not be eligible for reinstatement following his 60-day suspension until a mental health professional confirmed that he adequately was able to perform his duties as a lawyer. Finally, the stipulation provided that, if the accused failed to comply with the conditions of his probation, then the Bar may seek to revoke his probation under Bar Rule of Procedure (BR) 6.2(d), set out *post*, and impose the stayed 120-day suspension.

The second instance of neglect, which involved a client named Poch, overlapped to some extent with the period of time during which the accused was negotiating the stipulation for discipline in case 95-83. The accused began representing Poch, the wife in a marriage dissolution action, in July 1994. Between August 1994 and April 1995, the accused and husband's lawyer, White, negotiated the sale of the Pochs' real property to one of the Pochs' daughters. While the sale was pending, the accused and White filed a stipulated judgment (pending final judgment) with the court. The sale closed, the proceeds were delivered to White, and White deposited them into her trust account. The accused did not confirm White's receipt or deposit of the proceeds.

In May 1995, the court dismissed the Pochs' dissolution action, which could be reinstated only by court order. The accused received notice of the dismissal, but he did not notify Poch and took no action to reinstate the case. Also, between May 1995 and December 1995, the accused spoke to Poch only twice, at her initiation.

In December 1995, as noted, this court accepted the stipulation for discipline in case 95-83. The accused began serving his suspension in late December 1995. At about the same time, he sent a draft of a final stipulated judgment in the Poch case to White, together with a letter explaining that

he was not then working as a lawyer and that his supervising lawyer, Chally, would be acting in Poch's behalf. The accused did not send a copy of that letter to Poch.

In March 1996, the accused was reinstated, after his mental health therapist, Dr. Jones, confirmed that he could function as a lawyer under the terms and conditions of his probation in case 95-83. In April 1996, the accused met with Poch. The accused told Poch that action was needed on her case, but he did not tell her that the case had been dismissed. The accused took no action to reinstate Poch's case until mid-July 1996, and he returned only a few telephone calls from Poch.

In July 1996, Poch filed a complaint with the Bar. On the day that the Bar drafted a letter notifying the accused of Poch's complaint, the accused wrote to White, apologizing for the delay and lack of communication, and recommending a final resolution of the case.[2] The accused copied Poch on that letter and advised Poch that Chally had agreed to take over the case.

In February 1997, the Bar filed a formal complaint against the accused, alleging a violation of DR 6-101(B) in the Poch matter, spanning the time period between May 1995 and March 1996 (case 96-129). In April 1997, the Bar petitioned to revoke the accused's probation in case 95-83. The two cases then were consolidated for proceedings before a trial panel.

A trial panel hearing was held in July 1997. The parties submitted stipulated facts that, unlike the allegations in the Bar's complaint in case 96-129, reflected that the accused had neglected the Poch case between May 1995 and mid-July 1996, rather than between May 1995 and March 1996. The accused admitted in the stipulated facts that his conduct in case 96-129 had violated DR 6-101(B). He further admitted to the trial panel that, by virtue of that conduct, he also had violated his probation in case 95-83, by failing to adhere to the Code of Professional Responsibility and by failing to stay current on a case.

---

[2] It is unclear from the record whether the accused wrote that letter before or after he received notice that Poch had filed a complaint against him.

The accused also presented testimony of 11 witnesses, in addition to himself, as well as testimony by stipulation of nine other witnesses. In general, that testimony summarized a number of personal problems and mental depression that the accused had suffered in early 1994 through 1995, and the active steps that he had taken, beginning in mid-1996, to improve his mental health and his office practices. Such steps included cooperation with Chally and a second supervising lawyer, McCollom; self-initiated, regular contact with a practice management advisor at the Professional Liability Fund (PLF); incorporation of office improvements suggested by those individuals and others; and regular therapy sessions with Jones. Almost without exception, the witnesses testified that both the accused's mental health and his office practices had improved remarkably, particularly within the six months preceding the hearing. All witnesses who were so asked testified that the accused was a talented trial lawyer who was fit to practice law. The Bar presented no witnesses, but the accused stipulated that some professionals and clients had found his pattern of responsiveness "less than satisfactory."

In November 1998, more than a year after the hearing, the trial panel concluded that the appropriate sanction in case 96-129 was a public reprimand. The trial panel further concluded that the probation in case 95-83 would not be revoked but, rather, that its terms and conditions would continue in full force and effect. The trial panel declined to impose the previously stayed 120-day period of suspension.

The Bar petitioned for review in this court, BR 10.1, contending that, in case 96-129, the accused should be suspended for 60 days and that, in case 95-83, the accused's probation should be revoked and the previously stayed 120-day suspension now should be imposed. The accused responds that, as to the disposition of both cases, this court should reach the same conclusion as the trial panel. We review *de novo*. ORS 9.536(3); BR 10.6.

## SANCTION IN CASE 96-129

We begin with case 96-129, which involved the Poch matter. In determining the appropriate sanction for the

accused's misconduct, we look to the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA Standards) and to this court's case law. *In re Meyer (II)*, 328 Or 220, 226, 970 P2d 647 (1999). We first consider three factors: (1) the ethical duty violated by the accused's misconduct; (2) the accused's mental state at the time of the misconduct; and (3) the actual or potential injury caused by the misconduct. ABA Standard 3.0; *Meyer (II)*, 328 Or at 226. We then make an initial determination of the appropriate sanction, based upon those factors. *Meyer (II)*, 328 Or at 226. Next, we consider the existence of any aggravating or mitigating factors, and the extent to which the sanction should be adjusted accordingly. ABA Standard 3.0; *Meyer (II)*, 328 Or at 226. Finally, in determining the appropriate sanction, this court also considers Oregon case law. *Meyer (II)*, 328 Or at 226.

The ABA Standards assume that the most important ethical duties are those that a lawyer owes to the client. ABA Standards at 5; *In re Sousa*, 323 Or 137, 145, 915 P2d 408 (1996). We find that the accused violated his duty to Poch to act with diligence and promptness in handling her case. *See* ABA Standard 4.4 (describing that duty).

As to mental state, the ABA Standards define "knowledge" as "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." ABA Standards at 7. The ABA Standards define "negligence" as "the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation." *Id.*

The Bar contends that the accused acted with knowledge when he neglected the Poch matter. The accused argues that he acted negligently. We conclude that the accused's state of mind changed during the course of handling the Poch matter. As to the neglect that occurred between May and December 1995, there is no evidence that the accused acted knowingly. However, after being reinstated in March 1996, the accused reviewed his case list, including the Poch case, with Chally on a monthly basis, which demonstrates that he

continually must have been aware of the status of the case. We therefore find that, as to the neglect that occurred from March to mid-July 1996, the accused acted with "conscious awareness of the * * * attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." ABA Standards at 7.

Turning to injury, the only evidence of actual injury to Poch is that she suffered anxiety and frustration as a result of the accused's neglect of her legal matter. *See In re Schaffner*, 325 Or 421, 426-27, 939 P2d 39 (1997) (client's anxiety and frustration can constitute actual injury under ABA Standards).[3] Further, we infer from the circumstances — particularly the accused's failure to take action for several months after Poch's case was dismissed and to advise Poch of that fact — also caused potential injury to Poch's legal interests. *See generally In re Garvey*, 325 Or 34, 43, 932 P2d 549 (1997) (accused lawyer's neglect caused potential injury to clients' legal interests).

The ABA Standards suggest that, as a preliminary matter, a public reprimand would be the appropriate sanction for the accused's misconduct in case 96-129. *See* ABA Standard 4.43 (reprimand generally appropriate when lawyer does not act with reasonable diligence in representing client and causes potential injury to client); ABA Standard 4.44 (admonition generally appropriate when lawyer does not act with reasonable diligence and causes little or no actual or potential injury). We now consider the applicable aggravating and mitigating factors that might affect our determination of the appropriate sanction.

The first, and most significant, applicable aggravating factor is the accused's prior disciplinary record. *See* ABA Standard 9.22(a) ("prior disciplinary offenses" serve as aggravating factor). In addition to the neglect at issue in case 95-83, for which the accused stipulated that a 180-day suspension (with 120 days stayed) was an appropriate sanction,

---

[3] The Bar did not call Poch as a witness before the trial panel; however, Chally testified that Poch had suffered anxiety and frustration, and the accused acknowledged before the trial panel that his misconduct had caused that type of injury to Poch.

the accused also received a public reprimand in 1993 for violating DR 5-105(E), which prohibits multiple representations that would result in current client conflicts. *In re Cohen*, 316 Or 657, 853 P2d 286 (1993).

The accused also has received two letters of admonition. Although this court in the past generally has considered such letters to be part of a lawyer's prior disciplinary record, *see, e.g.*, *In re Stauffer*, 327 Or 44, 68, 956 P2d 967 (1998) (one letter of admonition constituted lawyer's only "prior disciplinary offense"), we now conclude, as explained below, that we shall consider a letter of admonition as an aggravating factor only in certain, limited circumstances.

Letters of admonition fall within the discretion of the State Professional Responsibility Board (SPRB). The SPRB may issue such a letter to a lawyer against whom a complaint has been filed with the Bar, upon a determination that probable cause exists to believe that misconduct has occurred. The letter is issued in lieu of referring the complaint either to a Local Professional Responsibility Committee (LPRC) for investigation or to the Bar for filing a formal complaint. BR 2.5(d)(1).[4]

Under the Bar Rules of Procedure, a letter of admonition neither is a "sanction," nor is it part of a "disciplinary proceeding" or an accused lawyer's "prior record." *See*

---

[1] BR 2.5(d)(1) provides, in part:

"[Unless the complaint is referred to an LPRC], the SPRB shall evaluate the complaint based on the report of Disciplinary Counsel to determine whether probable cause exists to believe misconduct has occurred. The SPRB shall either dismiss the complaint, refer it to an LPRC, *admonish the attorney*, approve the filing of a formal complaint by the Bar against the attorney, or take other action within the discretion granted to the SPRB by these rules.

"(A) If the SPRB determines that probable cause does not exist to believe misconduct has occurred, the complaint shall be dismissed and the complainant and the attorney shall be notified of the dismissal in writing by Disciplinary Counsel.

"(B) If the SPRB determines that the attorney should be admonished, such procedure shall be initiated within 14 days of the SPRB's meeting. If an attorney refuses to accept the admonition, a formal complaint shall be filed by the Bar against the attorney. * * *"

(Emphasis added.) *See also* BR 2.5(f)(1) (providing same options for SPRB after LPRC investigation).

BR 1.1(m) ("[d]isciplinary [p]roceeding" defined as proceeding in which Bar charges lawyer with misconduct "in a formal complaint"); BR 6.1 (listing "sanctions" available in "disciplinary proceedings" as public reprimand, suspension, disbarment, restitution, and reimbursement to Client Security Fund); BR 5.5(a) (defining "[p]rior record," for purpose of prohibiting admission of same to prove character or to impeach, as "any contested * * * disciplinary * * * decision of the Disciplinary Board or the Supreme Court which has become final"). *See also* BR 3.6(c)(iv) (requiring stipulation for discipline to recite accused lawyer's "prior record of reprimand, suspension or disbarment"). Under the Bar Rules of Procedure, then, it is inaccurate to characterize an earlier letter of admonition as a "sanction" or as part of a "prior record" of discipline previously imposed upon an accused lawyer.[5]

Notwithstanding the particular wording of those various rules, this court's case law demonstrates that a letter of admonition can be relevant to the determination of the appropriate sanction in a subsequent proceeding involving other misconduct. Indeed, this court has discussed the existence of earlier letters of admonition as part of an accused lawyer's "prior disciplinary record" in 15 cases; the court discounted the letters in only two of those cases.[6] The case law

---

[5] The Board of Governors of the Bar (BOG) has adopted the following policy statement concerning letters of admonition:

"*An admonition does not constitute the imposition of formal discipline.* An admonition is, however, a public statement that the attorney's conduct, in the opinion of the SPRB, violated the rules of professional conduct of the Oregon State Bar."

BOG Policy 9.305(B), approved as of August 1990 (emphasis added). *See also* ORS 9.110 (BOG "may formulate and declare rules for carrying out the functions of the state bar").

[6] The court considered an earlier letter or letters of admonition to constitute a "prior disciplinary offense" or part of the accused lawyer's "prior disciplinary record" in the following cases: *In re Devers*, 328 Or 230, 243, 974 P2d 191 (1999); *Stauffer*, 327 Or at 68; *In re Starr*, 326 Or 328, 347, 952 P2d 1017 (1998); *In re Jones*, 326 Or 195, 199-201, 951 P2d 149 (1997); *In re Jeffery*, 321 Or 360, 375, 898 P2d 752 (1995); *In re Porter*, 320 Or 692, 708, 890 P2d 1377 (1995); *In re Whipple*, 320 Or 476, 489 n 9, 886 P2d 7 (1994); *In re Devers*, 317 Or 261, 363-64, 855 P2d 617 (1993); *In re Benson*, 317 Or 164, 170, 854 P2d 466 (1993); *Cohen*, 316 Or at 664; *In re McKee*, 316 Or 114, 131, 849 P2d 509 (1993); *In re Benjamin*, 312 Or 515, 523, 823 P2d 413 (1991); *In re Hedrich*, 312 Or 442, 450, 822 P2d 1187 (1991). The court declined to consider the accused lawyer's earlier letter of admonition in *In re Gildea*, 325 Or 281, 299 n 24, 936 P2d 975 (1997) (letter of admonition not of "sufficient moment" to be relevant to subsequent sanction), and in *In re Gastineau*, 317

further demonstrates that a letter of admonition particularly can be significant if it involved misconduct that was similar to the misconduct at issue in the case at bar and if the accused lawyer received the letter close in time to the misconduct at issue. *See In re Porter*, 320 Or 692, 708, 708 n 9, 890 P2d 1377 (1995) (court considered letter of admonition arising from misrepresentation and issued three months before lawyer engaged in misconduct involving dishonesty to be particularly significant in determining appropriate sanction for dishonesty). It also bears noting that, in *In re Jones*, 326 Or 195, 200, 951 P2d 149 (1997), this court considered the accused lawyer's two letters of admonition to be part of his disciplinary record when it set out the following construct for analyzing such a record:

> "We take this opportunity to discuss our application of the 'prior offenses' aggravating factor. First, that factor refers to offenses that have been adjudicated[7] prior to imposition of the sanction in the current case. Second, the following considerations also are an important part of our analysis: (1) the relative seriousness of the prior offense and resulting sanction; (2) the similarity of the prior offense to the offense in the case at bar; (3) the number of prior offenses; (4) the relative recency of the prior offense; and (5) the timing of the current offense in relation to the prior offense and resulting sanction, specifically, whether the accused lawyer had been sanctioned for the prior offense before engaging in the offense in the case at bar. Those considerations are important, because they can serve to heighten or diminish the significance of earlier misconduct."

As this court has noted before, the ABA Standards, which represent a comprehensive authority concerning sanctions in lawyer discipline cases, serve as a helpful guide to this court —although not as binding authority—in determining issues surrounding the determination of the appropriate

---

Or 545, 558, 857 P2d 136 (1993) (letter of admonition considered in mitigation, because remote in time).

[7] Because, under BR 1.1(m) and BR 6.1(a), a letter of admonition is not part of a disciplinary proceeding, the term "adjudication" is not entirely accurate in that respect. Instead, when read in context, *Jones* was referring both to offenses for which the SPRB had issued a letter of admonition and to those for which the accused lawyer formally had been disciplined by public reprimand, suspension, or disbarment.

sanction in a given circumstance. *See In re Morrow*, 303 Or 102, 107, 734 P2d 867 (1987) (so stating). As to the issue before us here, the ABA *Standards* generally confirm the approach taken in this court's case law, as discussed above. *See* ABA Standard 2.6 (admonition available "sanction" for ethical misconduct); ABA Standard 8.3(b) (reprimand generally appropriate when lawyer has received admonition for same or similar misconduct, and causes injury or potential injury to client, public, legal system, or profession). Indeed, the "prior disciplinary offenses" aggravating factor, ABA Standard 9.22(a), incorporates any admonition previously imposed upon an accused lawyer as a sanction for earlier misconduct. *See* Commentary to ABA Standard 9.2, *citing People v. Vernon*, 660 P2d 879, 881 (Colo 1982) (when considering appropriate sanction for conversion of client funds, Colorado Supreme Court noted that accused lawyer had received three letters of admonition for misconduct occurring after misconduct at issue; lawyer had no other disciplinary record). *See also generally* American Bar Association's *Model Rules for Lawyer Disciplinary Enforcement* (1996), Rule 10(A)(5) (admonition may serve as evidence of prior misconduct bearing upon sanction in subsequent proceeding).

We draw the following principles from the foregoing sources of law and related materials. First, as noted, it is inaccurate under the Bar Rules of Procedure to characterize a letter of admonition as a form of "sanction" or as part of a "prior record" of discipline imposed upon an accused lawyer. Nonetheless, this court's case law demonstrates that such a letter can be relevant to the determination of the appropriate sanction in a subsequent proceeding for other misconduct, because it demonstrates that the accused lawyer has engaged in misconduct in the past. Finally, this court has taken particular note when an earlier letter of admonition involved the same or similar type of misconduct as that at issue in the case at bar, and when the earlier letter was issued shortly before the accused lawyer engaged in the misconduct at issue.

■ ■ We conclude that a letter of admonition should be considered under ABA Standard 9.22(a), as evidence of past misconduct, if the misconduct that gave rise to that letter was of the same or similar type as the misconduct at issue in the case at bar. If that circumstance is present, then it is

appropriate to consider a letter of admonition—together with an accused lawyer's formal disciplinary record, if any—under the construct set out in *Jones*, 326 Or at 200. Stated differently, if the letter of admonition involved the same or similar type of misconduct as that presently at issue, then the remaining factors set out under *Jones*—including the relative recency of the misconduct giving rise to the letter of admonition and whether the accused lawyer had received that letter before engaging in the misconduct at issue—serve to heighten or diminish the significance of the misconduct that gave rise to the letter of admonition. However, if a letter of admonition involved misconduct wholly different in nature from the misconduct at issue in the case at bar, then we ordinarily shall not consider that letter under ABA Standard 9.22(a).

In this case, the accused was admonished in May 1989, and again in December 1990, for violating DR 6-101(B). Because those two earlier letters of admonition concerned precisely the same type of misconduct at issue in the Poch matter, we shall apply the considerations set out in *Jones* to both those letters of admonition, as well as to the accused's formal disciplinary record, which included his stipulation for discipline in case 95-83 and his 1993 public reprimand for violating DR 5-105(E).

We first note that, although the accused's earlier offenses were not relatively serious in isolation, it is significant that he has been disciplined once and admonished twice for neglect of a client matter. It also bears consideration that the accused has engaged in four earlier instances of misconduct; however, the significance of the first three instances is diminished somewhat, as they were removed in time from his misconduct in the Poch matter. Finally, we find it significant that the accused neglected the Poch matter while negotiating his stipulation for discipline in case 95-83 and, for a short period of time, after being reinstated following his suspension in that case.

Turning to other aggravating factors, we note that the accused engaged in a pattern of misconduct when he neglected the Poch matter in part on the heels of being disciplined for the same type of misconduct in case 95-83. ABA

Standard 9.22(c); *see also In re Bourcier*, 325 Or 429, 436, 939 P2d 604 (1997) (finding pattern of misconduct to exist when accused lawyer failed to cooperate after recently having been disciplined for similar misconduct, among other misconduct); *Schaffner*, 325 Or at 427 (finding pattern in light of accused's recent discipline for similar misconduct). We further note, however, that we already have considered the weight of the accused's earlier neglectful conduct in aggravation under ABA Standard 9.22(a).

The final applicable aggravating factor is substantial experience in the practice of law, ABA Standard 9.22(i), the accused having been admitted to practice in 1979.

We find a significant number of mitigating factors to exist, including absence of a dishonest or selfish motive, good faith effort to rectify the consequences of the misconduct, full disclosure and cooperative attitude toward the disciplinary proceedings, favorable character and reputation, and remorse. ABA Standards 9.32(b), (d), (e), (g), and (l). We discuss additional mitigating factors below.

The trial panel found that the accused suffered from personal and emotional problems, as well as a mental disability, when he neglected the Poch matter. ABA Standards 9.32(c) and (i) (amended 1992). Under the ABA Standards, mental disability may be considered a mitigating factor only when:

"(1) there is medical evidence that the [accused lawyer] is affected by a * * * mental disability;

"(2) the * * * mental disability caused the misconduct;

"(3) the [accused lawyer's] recovery from the * * * mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

"(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely."

ABA Standard 9.32(i) (amended 1992); *see also In re Murdock*, 328 Or 18, 29-30, 968 P2d 1270 (1998) (applying 1992 version of ABA Standard 9.32(i) in context of chemical dependency). We turn to a review of the facts that are relevant to determining whether ABA Standard 9.32(i)

(amended 1992), as well as ABA Standard 9.32(c), are applicable here.

In early 1994, while the accused was representing Richardson in case 95-83, his children's long-time nanny and his ex-wife, a quadriplegic for whom the accused had acted as a primary caretaker and with whom he had maintained a close relationship, both died suddenly. Their deaths occurred within a month of each other, leaving the accused to care for his two daughters, of whom he already had primary custody, without his long-standing family support system. As a result of those events, coupled with a 1992 courtroom suicide of a client in the accused's presence, the accused suffered from "dysthemic disorder," a form of depression,[8] as well as post-traumatic stress syndrome. According to Jones, the accused's depression diminished his ability to function throughout most of 1994 and 1995, and had its greatest detrimental impact upon his office administrative tasks (as opposed to his high-pressure trial practice). Although it is clear from the record that the accused's depression greatly contributed to his misconduct in case 96-129, the accused also acknowledged that, had more efficient office practices been in place, he might have weathered his depression without violating DR 6-101(B).[9]

The accused began taking medication for his condition in late 1995 and continued to do so through mid-1996. Jones testified that the medication had made a "remarkable difference" in the accused's mental function. A number of witnesses also testified that, in the year before the trial panel hearing in July 1997, the accused had made great strides in improving his mental health and overall outlook, his energy level, and his office practices. The same witnesses further

---

[8] Jones described the accused's dysthemia as a "chronic depressive disorder that doesn't completely impair one's ability to function in the outside world, but is a major detrimental factor in terms of functioning at peak capabilities."

[9] The Bar contends that, because the accused neglected the Poch matter in part after being reinstated in March 1996 based upon Jones's recommendation that he was fit to practice, he could not be said to have been suffering from a mental disability after that time. After reviewing the entire record, we find that the accused's depression continued to affect his ability to function through mid-1996 (although to a lesser extent than in 1994 and 1995), encompassing the time period in question.

testified that they thought that the accused would continue to improve and would not engage in future misconduct.

The foregoing facts support application of ABA Standards 9.32(c) (personal and emotional problems) and 9.32(i) (amended 1992) (mental disability). *Compare Murdock*, 328 Or at 29-30 (declining to find chemical dependency as mitigating factor under ABA Standard 9.32(i) (amended 1992) when accused lawyer failed to demonstrate causation, recovery, or unlikeliness of recurrence); *In re Butler*, 324 Or 69, 74, 921 P2d 401 (1996) (declining to apply ABA Standard 9.32(c) when accused lawyer did not demonstrate that his personal problems contributed to his misconduct); *In re Morin*, 319 Or 547, 565, 878 P2d 393 (1994) (declining to apply ABA Standard 9.32(c) when accused lawyer acted with pattern of intentional deception and misconduct). We give very great weight to the mental-disability factor in the context of this case. *See* Commentary, ABA Standard 9.32 (amended 1992) (mental disability should be given "very great weight" as mitigating factor when it was "principally responsible" for misconduct in question).

A final mitigating factor is delay in the disciplinary process. ABA Standard 9.32(j) (amended 1992). The misconduct at issue in case 96-129 occurred between May 1995 and mid-July 1996. The trial panel hearing was held a year later, in July 1997, and the trial panel did not release its decision until November 1998. This court heard oral argument a year later, in November 1999.[10] In short, it has been four years since the accused neglected the Poch matter, and, according to the parties at oral argument, no complaints have been filed against the accused since that time. *See In re Unrein*, 323 Or 285, 288, 917 P2d 1022 (1996) (citing delay as particularly significant mitigating factor when four years elapsed between misconduct and court's decision, and no additional complaints had been filed); *Morrow*, 303 Or at 106 n 1, 106-07, 109 (court stayed suspension and imposed probation in light of improvements in accused lawyer's practice in nine

---

[10] There is no explanation in the record for the delay in the release of the trial panel's decision. In this court, the Bar received two 14-day extensions of time for briefing purposes, and the accused received one 21-day extension. Oral argument also was reset from September to November 1999, at the accused's request.

years since misconduct in question occurred and at least three years since other misconduct occurred).

We now consider the applicable case law. At the outset, we observe that a public reprimand can be an appropriate sanction for a single instance of neglect, particularly the type of neglect at issue in this case. *See In re Rudie*, 290 Or 471, 622 P2d 1098 (1981) (public reprimand for neglect of client's dissolution action, resulting in opposing party taking a default decree; accused lawyer found not to have committed other multiple violations). Cases involving isolated instances of neglect coupled with related misconduct have resulted in short suspensions. *See In re Hedges*, 313 Or 618, 836 P2d 119 (1992) (63-day suspension for neglect, misrepresentation, failure to maintain complete client-funds records and to pay funds to client, and failure to cooperate); *In re Kissling*, 303 Or 638, 740 P2d 179 (1987) (63-day suspension for neglect, misrepresentation, false statements, and failure to carry out contract of employment).

We have found only one case from this court in which an accused lawyer was charged with a single violation of DR 6-101(B). In *Meyer (II)*, 328 Or 220, this court imposed a one-year suspension upon an accused lawyer who knowingly neglected a client matter, causing actual injury to the client's case. The accused lawyer in that case previously had been reprimanded for neglect and improper withdrawal. He also contemporaneously had been suspended for other, unrelated misconduct of the same gravity as the neglect at issue in *Meyer (II)*. Additional aggravating factors were the accused lawyer's substantial experience in the practice of law and his refusal to acknowledge the wrongful nature of his conduct. No mitigating factors applied. *Id.* at 227-29. A lengthy suspension like that imposed in *Meyer (II)* is not warranted here, in light of the less grievous nature of the neglect at issue, the lack of harm to the client's case, and the significant number of applicable mitigating factors.

In addition to *Meyer (II)*, the Bar cites cases in which the accused lawyers repeatedly had engaged in neglect, among other misconduct, warranting lengthy suspensions. *See Bourcier*, 325 Or 429 (disbarment for neglect and failure to respond to Bar's inquiries, when accused lawyer acted

knowingly and had record of neglecting client matters and failing to respond); *Schaffner*, 325 Or 421 (two-year suspension for neglect, failure to deliver client property, and failure to respond, when accused lawyer acted knowingly and had been disciplined within prior year for similar misconduct). Those cases do not suggest the appropriate sanction here, because they both involved much more egregious incidents of neglect, coupled with complete, knowing failures to cooperate with Bar investigations, and no mitigating factors existed in either case.

However, *Bourcier*, *Schaffner*, and *Meyer (II)* all demonstrate that this court generally imposes a sanction of greater magnitude than ordinarily would be warranted when an accused lawyer has a prior disciplinary record, particularly when that record includes misconduct similar to the misconduct at issue in the case at bar. *See also Jones*, 326 Or at 202 (in light of prior disciplinary record that included similar misconduct, single act of misrepresentation warranted 45-day suspension, instead of 30-day suspension); *In re Hereford*, 306 Or 69, 76, 756 P2d 30 (1988) (imposing 126-day suspension instead of public reprimand for failure to cooperate, when accused lawyer had record of neglect and related misconduct). The Bar relies upon that unspoken principle in this case, asserting that, in light of the accused's prior disciplinary record, a suspension, rather than a public reprimand, is warranted here. *See also generally* ABA Standard 8.2 and accompanying commentary (suspension generally appropriate when lawyer previously reprimanded for same or similar misconduct, and causes injury or potential injury to client, among others); *Porter*, 320 Or at 708 (citing and applying ABA Standard 8.2).

Although that approach may be a sound one in most cases, we conclude that this case is exceptional. As noted, the only evidence of any actual injury to Poch is that of anxiety and frustration. Other than the accused's disciplinary record and earlier letters of admonition, the only aggravating factor of note is his substantial experience in the practice of law. Multiple mitigating factors exist, including full and free disclosure, and complete candor and cooperation with the Bar's investigation. We further note that the accused's depression contributed to his misconduct in case 95-83, which is the

most significant instance of earlier misconduct. Indeed, we view that instance of misconduct on a continuum together with case 96-129, rather than in isolation, because both occurred when the accused was in the depths of depression caused by personal crises and while he was in the beginning stages of recovering from that depression. Finally, the record is replete with testimony concerning the accused's concentrated efforts, beginning in mid-1996, to improve his mental health and his office practices, and his success in doing both. In short, the circumstances of this case justify imposition of a less severe sanction than ordinarily would be warranted in light of the accused's earlier instances of misconduct. *See generally In re Allen*, 326 Or 107, 127-30, 949 P2d 710 (1997) (existence of nine mitigating factors balanced against only two aggravating factors warranted shorter suspension than earlier case involving comparable misconduct).

As this court has stated before,

> "[t]he purpose of a lawyer disciplinary proceeding is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely to discharge properly their professional duties to clients, the public, the legal system, and the legal profession."

*Bourcier*, 325 Or at 437; *see also* ABA Standards at 7 (so stating). After reviewing the entire record in this case, we cannot say that the accused is unlikely to discharge those professional duties. Indeed, in the four years that have elapsed since his misconduct in the Poch matter, the accused by all accounts has acted aggressively and effectively to remedy the deficiencies that led to his misconduct, and has made remarkable and consistent improvement in all the areas that required attention.

On *de novo* review, we conclude that the appropriate sanction in case 96-129 is a public reprimand.

## PROBATION REVOCATION IN CASE 95-83

Finally, the Bar contends that, because the accused violated DR 6-101(B) during the time when he was negotiating the stipulation for discipline in case 95-83, and during the beginning of his probationary period in that case, this court

should revoke his probation and impose the previously stayed 120-day suspension. The accused responds that his probation was subject to a number of detailed terms and conditions, only one of which was violated—failing to stay current on a single case out of about 130 cases. The accused further points out that, while his probation originally was to be for a two-year period, set to expire in December 1997,[11] he continued on probation until just before oral argument in this court in November 1999, complying with every term and condition thereof.[12] In the accused's view, the purpose of his probation has been met, and, therefore, there is no reason to revoke his probation and impose the stayed 120-day suspension.

As noted, the accused was on probation from approximately December 1995 to November 1999—a period encompassing almost four years. Moreover, the Bar effectively conceded at oral argument that the accused's term of probationary supervision had ended; however, it still seeks to have the 120-day suspension imposed. In the Bar's view, the accused must be held to his part of his agreement with the Bar, by serving the stayed suspension as a consequence for violating a condition of his probation.

For the following reasons, we disagree. First, BR 6.2(a), which sets out the authority to impose probation, provides, in part:

---

[11] The stipulation for discipline in case 95-83 provided that the accused's probation was to commence on the effective date of the stipulation. This court approved the stipulation in December 1995, *nunc pro tunc* November 1995. The parties both characterize the accused's probation as beginning in December 1995, on the date when he began serving his 60-day suspension.

[12] The accused characterizes the excessive length of his probation as resulting from an "extension" initiated by the Bar. The Bar, however, contends that its petition to revoke probation and this court's resulting show-cause order in case 95-83 "tolled" the accused's probationary status. Nothing in the Bar Rules of Procedure or this court's case law speaks to a "tolling" of probation, and there is no documentation in the record indicating that the Bar sought an extension of the accused's probation or a formal declaration that his probation had been "tolled."

At oral argument, the Bar stated that it recently had informed the accused that it no longer would be supervising him, although it could not confirm when or if his probation in fact had terminated. In any event, the accused had complied with all the terms and conditions of his probation throughout the time period between the filing of the Bar's petition for revocation and oral argument.

"Upon determining that an accused should be suspended, the trial panel[13] may decide that the execution of the suspension shall be stayed, in whole or in part, and that the accused shall be placed on probation for a period no longer than three years."

We have found nothing in the Bar Rules of Procedure that provides for an extension of probation beyond three years. Here, the accused served his probationary term for almost a year more than the maximum three-year term allowed under BR 6.2(a), and, according to the Bar, it no longer is supervising the accused. From those facts, any dispute concerning the accused's probation and the suspension stayed as a result of that probation arguably is moot.

■      Even if the issue were not resolved on mootness grounds, the Bar Rules of Procedure do not *require* that a lawyer who violates a probationary term must, as a result of that violation, serve out the stayed suspension. Rather, BR 6.2(d) provides, in part:

"Disciplinary Counsel [of the Bar] *may* petition the * * * Supreme Court * * * to revoke the probation of any attorney for violation of any probationary term. The * * * court *may* order the attorney to appear and show cause, if he or she has any, why the attorney's probation should not be revoked and the original sanctions imposed. A petition for revocation of an attorney's probation shall not preclude the Bar from filing independent disciplinary charges based on the same conduct as alleged in the petition."

(Emphasis added.) In short, the Bar is not *entitled* to a revocation of the accused's probation and imposition of the suspended sentence; rather, it is granted the discretion to *petition* for revocation, as it did in this case.

Finally, the record demonstrates conclusively that, with the single exception of neglecting the Poch matter within the first six months of his probation, the accused has

---

[13] Although BR 6.2(a) refers to suspension by a trial panel, BR 3.6(c)(iii) provides for the execution of a stipulation for discipline that sets out the "designated form of discipline" agreed to by an accused lawyer. Such a designated form of discipline may include probation and a stayed term of suspension, as contemplated by BR 6.2(a) and as agreed to by the parties in this case.

complied with the terms and conditions of his probation in every respect. Indeed, the accused willingly has taken all the steps to improve his mental health and his office practices that the Bar would encourage any lawyer in his position to take, including therapy, active solicitation and implementation of advice from the PLF and other lawyers for improving his office practices, cooperation with his supervising lawyers, and commendable candor and acknowledgment of the Bar's need to scrutinize his practice in every step of the process. In short, nothing in the record supports the conclusion that the previously stayed 120-day suspension now should be imposed, assuming that we would have the power to do so. To the contrary, we conclude that the accused's probation in case 95-83 should be terminated. This opinion shall serve that function.

## CONCLUSION

We do not view neglect of a client matter lightly— particularly repeated instances of neglect. However, in aggressively and successfully addressing his mental health problems and the deficiencies in his office practices that led to his misconduct, the accused in this case has contributed to the integrity of the disciplinary process. The only sanction that is warranted in the matters before us is a public reprimand.

The accused is reprimanded in case 96-129. The accused's probation is terminated in case 95-83.

**RIGGS, J.**, concurring in part and dissenting in part.

I concur with the majority's result and analysis, except to the extent that the majority fails to apply prospectively what can be considered only a newly announced rule concerning past letters of admonition as a factor that aggravates a current sanction.

The majority asserts that this court, in the past, generally has considered letters of admonition to be part of a lawyer's prior disciplinary record. 330 Or at 497. In support of that position, the majority cites *In re Stauffer*, 327 Or 44, 956 P2d 967 (1998), and a series of cases set out in footnote 6 of

the majority's opinion. 330 Or at 498 n 6. The majority suggests that those cases support its position because those cases refer either to the admonition being a "prior disciplinary offense" or part of the accused lawyer's "prior disciplinary record." In my view, however, those cases are not clear on the significance, if any, of a letter of admonition. *Compare In re Gildea*, 325 Or 281, 299 n 24, 936 P2d 975 (1997) (expressly declining to consider letter of admonition as part of prior disciplinary record), *with In re Jones*, 326 Or 195, 200, 951 P2d 149 (1997) (stating that this court considers only "offenses that have been adjudicated," but nevertheless noting that accused had engaged in misconduct that resulted in letters of admonition), *and In re Whipple*, 320 Or 476, 489 n 9, 886 P2d 7 (1994) (noting, without further discussion, that accused had received letter of admonition).

An example of this court's confusing pronouncements on the issue is the *Jones* court's reference to "adjudicated" offenses. The majority now concedes that the use of that term "is not [an] entirely accurate" description for a letter of admonition. 330 Or at 499 n 7.

The majority also posits that this court's "case law further demonstrates that a letter of admonition particularly can be significant if it involved misconduct that was similar to the misconduct at issue in the case at bar and if the accused lawyer received the letter close in time to the misconduct at issue." 330 Or at 498-99. Although I agree with the wisdom of such a rule, I disagree that our case law, taken as a whole, supports the claimed history of such a rule of law. My review of the 15 cases cited by the majority in its footnote 6 discloses seven cases wherein the court did not mention the nature of misconduct that was the subject of the letter of admonition. Those cases are *In re Devers*, 328 Or 230, 243, 974 P2d 191 (1999); *Stauffer*, 327 Or at 68; *Gildea*, 325 Or at 299 n 24; *Whipple*, 320 Or at 489 n 9; *In re Gastineau*, 317 Or 545, 558, 857 P2d 136 (1993); *In re Devers*, 317 Or 261, 263-64, 855 P2d 617 (1993); *In re Benson*, 317 Or 164, 170, 854 P2d 466 (1993). In four additional cases, the misconduct involved in the prior letter of admonition differed from the misconduct at issue. Those cases are *In re Starr*, 326 Or 328, 347, 952 P2d 1017 (1998); *Jones*, 326 Or at 200; *In re Cohen*, 316 Or 657, 664, 853 P2d 286 (1993) (*Cohen I*); *In re Hedrick*,

312 Or 442, 450, 822 P2d 1187 (1991). In only two cases that the majority cites, *In re Porter*, 320 Or 692, 708 n 9, 890 P2d 1377 (1995), and *In re Benjamin*, 312 Or 515, 523, 823 P2d 413 (1991), did the letter of admonition involve misconduct that was similar to the misconduct at issue.

The majority also points out that the Board of Governors (BOG) of the Oregon State Bar has adopted the following policy statement concerning letters of admonition:

> "*An admonition does not constitute the imposition of formal discipline.* An admonition is, however, a public statement that the attorney's conduct, in the opinion of the SPRB, violated the rules of professional conduct of the Oregon State Bar."

BOG Policy 9.305(B), approved as of August 1990 (emphasis added). The BOG policy statement does not constitute a disciplinary rule, nor does it bind this court unless adopted as a rule. Nevertheless, the existence of the policy statement has the potential to have misled lawyers who have settled their differences with the Bar in the belief that the BOG policy statement meant that the acceptance of a letter of admonition would not carry with it the consequences that the majority's opinion now mandates.

Because of the lack of clarity in this court's case law and the existence of BOG Policy 9.035(B), and because I believe that we have created unwittingly today a trap for those who have detrimentally relied on the previous state of the law, I would apply the rule concerning letters of admonition prospectively only.

For those reasons, I concur in the result of the majority, but I dissent as to the retroactive application of that part of the majority's opinion that deals with the effect of prior letters of admonition.